# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-4293

HESS NEWMARK OWENS WOLF, INC.,

*Plaintiff-Appellant,*

v.

DORIS OWENS and OWENS GROUP, INC.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 04 C 4821—**Michael T. Mason**, *Magistrate Judge.*

———————

ARGUED MAY 13, 2005—DECIDED JULY 11, 2005

———————

Before CUDAHY, EASTERBROOK, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In 1998 four veterans of the motion-picture promotion business—Mary Hess, Barry Newmark, Doris Owens, and Stuart Wolf—decided to pool their efforts. They formed Hess Newmark Owens Wolf, Inc., or HNOW, to provide advertising, public relations, and promotional services to studios. Each of the four held 22.5% of the stock (a fifth investor received 10%). Each had operated an independent agency. Three of the four closed as part of HNOW's formation; the exception was Owens Group,

Inc. (OGI), which offered promotional services from its base in Cincinnati. The principals of the new venture agreed that OGI could remain in business, with Owens as its leader, provided that it confined its activities to Ohio, Kentucky, and the Indianapolis area. All four agreed on restrictive covenants that would limit their work in the movie-promotion business to HNOW for as long as he or she owned stock in HNOW and three years thereafter, in any part of the country where HNOW did business—again with the exception of the territory in which OGI held grandfather rights.

That promise made it easier for the three principals who burned their bridges behind them to devote full energies to HNOW. But for the restrictive covenant, each of the three would face not only the business risks endemic to the venture but also the risk that one or more of the other principals would bolt and leave the others with neither a viable business at HNOW nor another business to go back to. See Gary S. Becker, *Human Capital* 45-57 (3d ed. 1993). Keeping a personal-services business together can be difficult without the sort of trust and confidence engendered by promises to stick with the firm rather than strike off on one's own at the first opportunity. Owens had more of a cushion, for she not only received the promises of the other three but also retained her business at OGI. She was expected to be the principal rainmaker and used this to fortify her position. The opportunity to do business without sharing any of the profits with Hess, Newmark, and Wolf proved irresistible, however, and by 2003 Owens was using OGI to sell consulting services to Terry Hines Associates (THA), one of HNOW's business rivals. Owens helped THA set up new offices on the east coast (outside the states to which OGI was supposed to be limited), hire staff, and secure business there. Owens could have helped HNOW set up outposts, but she assisted its rival instead—and did not tell anyone at HNOW that she was doing this. When Hess found out, he told Owens in good movie-speak: "You are *so* fired!"

The board backed Hess up, and HNOW filed this suit under the diversity jurisdiction seeking an injunction against Owens's work for anyone else in the movie-promotion business, except through OGI in the reserved locations. (The plaintiff is HNOW rather than HNW because Owens retains her investment interest, and the firm has not changed its name—perhaps hoping that if it wins the case Owens will return to the fold and it can consummate a merger that was put on hold when the prospective partner discovered that Owens was a double agent.) The parties consented to final decision by a magistrate judge, see 28 U.S.C. §636(c), who concluded after a five-day evidentiary hearing that Owens probably has violated her duty of loyalty as a director by appropriating a corporate opportunity (as she could have performed the same consulting work through HNOW). Moreover, the judge concluded, Owens has violated the restrictive covenant by performing work in the movie-promotion business. The covenant, which specifically includes consulting work as well as other services, runs as far as the area in which HNOW competes, and as it is trying to become a national agency that territory is the nation. Nonetheless, the court held, HNOW is not entitled to injunctive relief because it failed to establish that it lost any particular account to THA as a result of Owens's efforts on its behalf. 2004 U.S. Dist. LEXIS 25636 (N.D. Ill. Dec. 15, 2004). Inability to establish lost business meant lack of irreparable injury, and there can be no injunction without irreparable injury.

The decision is wrong on its own terms, because HNOW *did* show a loss. HNOW sells consulting as well as advertising services. It could have sold THA the very services that Owens did through OGI; indeed, Owens could and should have billed these services *through* HNOW. That is why the magistrate judge deemed HNOW likely to prevail on its contention that Owens diverted a corporate opportunity to herself, in breach of her fiduciary duty. For a substantial

period during 2003 and 2004, Owens devoted 100% of her time to THA. What is more, Owens is *continuing* to provide services to THA to assist the newly opened offices to flourish. The income from that endeavor is (or should be) one of HNOW's assets, since the THA offices are located outside Ohio, Kentucky, and Indianapolis. An injunction could put a stop to that ongoing diversion.

The district court's decision has a deeper problem, however: a legal rule that irreparable injury can be established *only* by a concrete demonstration along the lines of "we lost the Philadelphia advertising business of Warner Bros. to THA as a result of Owens's work for our rival" would make injunctions useless as a practical matter. If proof of particular injuries could be supplied, then the injury would be reparable by damages; it is precisely the difficulty of pinning down what business has been or will be lost that makes an injury "irreparable." See *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Competition changes probabilities: a THA with stronger east-coast offices may improve by 5% or 10% the chance of receiving particular business from a particular studio. Over many years with hundreds of movies being promoted in 50 or more major metropolitan areas, a 5% swing can represent a lot of business—but HNOW will not be able to identify which contracts slipped from its grasp.

Illinois recognizes this. (The parties agree that its law governs.) It treats ongoing competition itself as a sufficient basis for relief. See, e.g., *Gold v. Ziff Communications Co.*, 196 Ill. App. 3d 425, 434, 553 N.E.2d 404, 410 (1st Dist. 1989) ("The failure of plaintiff to show an actual loss is not dispositive"); *U-Haul Co. v. Hindahl*, 90 Ill. App. 3d 572, 577, 413 N.E.2d 187, 192 (3d Dist. 1980) ("It is not necessary that a party seeking an injunction show an actual loss of sales before relief will be granted"). Owens is engaged in ongoing competition against HNOW; it is not as if she had retired or become an architect. HNOW's inability to show

that particular business has been lost therefore does not foreclose equitable relief. Federal courts apply the same rule to claims under the federal-question jurisdiction. See *Northeastern Florida Chapter, Associated General Contractors of America v. Jacksonville*, 508 U.S. 656 (1993) (reduction in the probability of obtaining business is enough to support an injunction); *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003) (to obtain an injunction the plaintiff must show a legal wrong and likely injury but not specific financial loss).

Owens contends that the judgment should be affirmed nevertheless because the covenants are unreasonable. Her principal contention is that Illinois would not enforce a nationwide prohibition. (She also contends that the scope of covered activities is too broad; we need not discuss this separately.) A national ban is not, however, what the covenants provide. They define the "restricted territory" as the place where HNOW markets its services or plans to do so in the three years during which the restrictions continue. If, as Owens insists, HNOW is a regional rather than a national agency, a wish to grow does not enlarge the "restricted territory." The precise scope of "restricted territory" is for the district court to pin down on remand. No matter what HNOW's plans, moreover, Owens is entitled to do business in the reserved territory: Ohio, Kentucky, and Indianapolis.

Let us suppose that HNOW has active plans to market in states outside the territory where OGI is entitled to do business. Would that make the covenants unreasonably broad? Owens says yes, relying on Illinois' hostility toward restrictive covenants. But when she formed HNOW she expressed a different view. Paragraph 7(F) of the shareholders' agreement provides: "Each Shareholder represents that he or she is familiar with the covenants not to compete and not to solicit contained herein and is fully aware of his obligations hereunder and agrees that the length of time, scope and geographic coverage of these covenants

is reasonable given the benefits received by him or her hereunder." The "benefits [Owens] received . . . hereunder" include, as we have mentioned, the commitment of the other three principals to give up their own businesses and join her in HNOW, which was expected to be stable in part because the covenants would make it hard for any of the four to jump ship later. We see no reason to ignore Owens's representation to her colleagues—a representation that induced the other founders to join HNOW—that she would not challenge the covenants' reasonableness later. This sort of representation made *in court* would bind Owens; why should it be less effective because made out of court? Cf. *Newton v. Rumery*, 480 U.S. 386 (1987) (enforcing a covenant not to sue); *Rissman v. Rissman*, 213 F.3d 381 (7th Cir. 2000) (treating as binding an investor's representation, made as part of a stock transaction, that he had not relied on any of the buyer's oral statements). No third parties are adversely affected; plenty of competition remains to protect movie studios and their customers.

The state's grudging attitude toward restrictive covenants is best understood as resting on a concern that employees can be tricked into making promises that seem of small detriment but later prove to be disabling. See generally the discussion in *Outsource International, Inc. v. Barton*, 192 F.3d 662, 669-71 (7th Cir. 1999) (Posner, J., dissenting). But Owens was an entrepreneur, not an ordinary employee; and what she gained by these covenants was not only a salary but also the opportunity to create a new business and secure the loyalty of her co-venturers. She is an intelligent adult and had the benefit of legal counsel in the transaction.

Illinois may be skeptical about covenants executed by salesmen and other employees, but it is quite willing to enforce covenants executed by entrepreneurs in order to form or sell a business. See, e.g., *Central Water Works Supply, Inc. v. Fisher*, 240 Ill. App. 3d 952, 956-58, 608

N.E.2d 618, 621-22 (4th Dist. 1993). This implies not simply a willingness to permit the entrepreneurs to bind themselves (through covenants) to the new venture but also a willingness to enforce provisions such as ¶7(F) that forestall litigation about the covenants' reasonableness. If a covenant were independently forbidden by some other rule of law—for example, a covenant to forfeit a pound of flesh—then a representation that the covenant was "reasonable" would be empty. But Illinois does not *forbid* restrictive covenants; it permits those that are matched reasonably well to the business objectives and risks at stake. One decision approved language that is all but identical to the text Owens signed. *Health Professionals, Ltd. v. Johnson*, 339 Ill. App. 3d 1021, 791 N.E.2d 1179 (3d Dist. 2003). See also *Fister/Warren v. Basins, Inc.*, 217 Ill. App. 3d 958, 964-65, 578 N.E.2d 37, 41-42 (1st Dist. 1991) (enforcing a five-year, nationwide covenant by entrepreneurs ancillary to the sale of a business). An agreement *ex ante* among the entrepreneurs that these covenants do fit their needs, and that they have received sufficient benefits in exchange for the restraints, is the sort of exchange that any jurisdiction must enforce if it wants to promote the formation and success of new businesses. Illinois has given no indication that it would refuse to enforce an entrepreneur's acknowledgment that a given covenant is reasonable.

The judgment of the district court is reversed, and the case is remanded with instructions to issue an injunction enforcing Owens's covenants, after first resolving any dispute about the extent of the "restricted territory" defined by the parties' agreement.

**A true Copy:**

**Teste:**

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*