In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2656

STULLER, INC.,

*Plaintiff-Appellee,*

*v.*

STEAK N SHAKE ENTERPRISES, INC. AND
STEAK N SHAKE OPERATIONS, INC.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 10 CV 3303—**Sue E. Myerscough**, *Judge.*

ARGUED MAY 23, 2012—DECIDED AUGUST 24, 2012

Before MANION, ROVNER, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* After the corporate office of Steak N Shake restaurants tried to require one of its franchisees to adopt a new policy for menu pricing and promotions, the franchisee sued Steak N Shake in a declaratory judgment action and later filed a motion for a preliminary injunction in order to stop the implementation of the new policy. The district court found

that in the absence of an injunction, the franchisee would have its franchises terminated and would therefore suffer irreparable harm. The district court thus granted the franchisee's motion for a preliminary injunction. Steak N Shake then filed this interlocutory appeal, arguing that the franchisee's harm was self-inflicted, and, accordingly, that there was no basis for a preliminary injunction. We affirm the district court.

I.

The plaintiff, Stuller, Inc. ("Stuller"), is an Illinois business that owns and operates five Steak N Shake franchises in Illinois. Stuller and its predecessors have operated the franchises since 1939. The defendants, Steak N Shake Enterprises, Inc. and Steak N Shake Operations, Inc. (collectively "Steak N Shake"), are the franchisor. Steak N Shake operates 413 other company-owned restaurants across the country and oversees 80 Steak N Shake franchises, including Stuller's franchises.

As the franchisor, Steak N Shake controls many aspects of its franchisees' businesses, including the style, decor, and menu offerings of its restaurants. But some aspects of the franchise are left to the control of the individual franchises. In this case, Stuller and its predecessors have operated its franchises for more than 70 years; in fact, it is the oldest franchisee in the country. In all that time, Stuller has had the ability to set menu prices. In June 2010, Steak N Shake adopted a new policy requiring all franchisees to follow the company's menu pricing and promotions. Stuller refused to implement the new policy,

believing that it was still authorized to set menu prices under its existing franchise agreements with Steak N Shake. Eventually, Steak N Shake notified Stuller that if Stuller did not implement the policy, Steak N Shake would terminate Stuller's franchises.

In November 2010, Stuller filed suit against Steak N Shake in federal district court based on diversity jurisdiction. In Count I of its suit, Stuller sought a declaratory judgment that it was not required to comply with Steak N Shake's new pricing policy and requested injunctive relief to prevent Steak N Shake from enforcing the new policy and finding Stuller in default (and subsequently terminating Stuller's franchises) if Stuller refused to adopt the policy. Count II alleged a breach of contract, and Count III alleged violations of the Illinois Franchise Disclosure Act, 815 ILCS 705/1.

Initially, Steak N Shake agreed not to enforce its pricing policy during the pendency of the lawsuit, but it soon changed its mind and again notified Stuller that it was required to implement the pricing policy or be subject to default and have its franchises terminated. Consequently, in January 2011, Stuller filed a motion for a preliminary injunction requesting that the district court prevent Steak N Shake from terminating the franchises during the pendency of the case. The motion was referred to the magistrate judge, who held an evidentiary hearing. The magistrate judge issued a Report and Recommendation, concluding that although Stuller's case had some prospects of success, Stuller had not shown that it would suffer irreparable harm without an injunc-

tion. In particular, the magistrate judge observed that Stuller could comply with the pricing policy during litigation without dramatically hurting its business, and that if it refused to accept the pricing policy and had its franchises terminated, this loss would be self-inflicted. The magistrate judge thus recommended that Stuller's motion for a preliminary injunction be denied.

Both parties filed objections to the Report and Recommendation and the district court issued an opinion disagreeing with the magistrate judge's recommendation. The district court concluded that the termination of the franchises that would occur if Stuller did not implement the policy was not a self-inflicted injury and that the loss of the franchises constituted irreparable harm. Accordingly, the district court granted Stuller's motion and entered an injunction barring Steak N Shake from taking any adverse action against Stuller for its refusal to implement the policy during the pendency of the case. Steak N Shake now appeals the grant of the preliminary injunction.

## II.

To obtain a preliminary injunction, the moving party must show that its case has "some likelihood of success on the merits" and that it has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). If the moving party meets these threshold requirements, the district court "must

consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). The district court must also consider the public interest in granting or denying an injunction. *Id.* In this balancing of harms conducted by the district court, the court weighs these factors against one another "in a sliding scale analysis." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). "The sliding scale approach is not mathematical in nature, rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" *Ty, Inc.*, 237 F.3d at 895-96 (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)). Stated another way, the district court "sit[s] as would a chancellor in equity" and weighs all the factors, "seeking at all times to 'minimize the costs of being mistaken.'" *Abbott Labs.*, 971 F.2d at 12 (quoting *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)).

When reviewing a district court's grant or denial of a preliminary injunction, "[w]e review the court's legal conclusions de novo, its findings of fact for clear error, and its balancing of the injunction factors for an abuse of discretion." *Ezell*, 651 F.3d at 694. "We accord, absent any clear error of fact or an error of law, 'great deference' to the district court's weighing of the relevant factors." *Ty, Inc.*, 237 F3d. at 896 (quoting *Abbott Labs.*, 971 F.2d at 13).

In this case, the district court found that Stuller had a likelihood of success on the merits and that the public interest weighed in Stuller's favor; these findings are not contested on appeal. The district court also found that because Stuller's franchises would be terminated by Steak N Shake if Stuller did not implement Steak N Shake's pricing policy, Stuller had demonstrated that it had no adequate legal remedy and would suffer irreparable harm in the absence of an injunction.

Steak N Shake appeals this latter finding, arguing that the district court committed a legal error in coming to this conclusion. Steak N Shake contends that the termination of Stuller's franchises is a "self-inflicted" injury that Stuller can avoid entirely. In Steak N Shake's view, Stuller can easily avoid the termination of its franchises by simply complying with the pricing policy; if Stuller chooses non-compliance with the policy, it is inflicting on itself the harm of the franchises' termination. Steak N Shake then argues that, as matter of law, a self-inflicted injury cannot be the basis for irreparable harm and, thus, Stuller has not met its threshold requirements for a preliminary injunction. Steak N Shake rests its argument on the following provision from our decision in *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003): "Injury caused by failure to secure a readily available license is self-inflicted, and self-inflicted wounds are not irreparable injury. Only the injury inflicted by one's adversary counts for this purpose."

Steak N Shake misreads our decision in *Second City*. In *Second City*, a used audio and video recordings dealer

objected to a city ordinance that required it to obtain a license to sell audio and video equipment. *Id.* at 847. We ruled that the dealer's refusal to apply for a license—without which the dealer would be out of business—was a self-inflicted injury because the dealer "would incur no detriment by the act of apply-ing" for the license. *Id.* at 849. The above passage quoted by Steak N Shake does not give a categorical legal rule that a self-inflicted injury cannot be irreparable harm. Instead, it is a statement in the context of the particular circumstances of the case, where we held that there was "no strong justification for immediate [injunctive] relief to *this* plaintiff." *Id.* (emphasis in original). And then we specifically noted that if the *Second City* plaintiff had, say, a religious objection to licensing, an injunction would be justified. *Id.* (citing *Watchtower Bible & Tract Soc'y v. Village of Stratton*, 536 U.S. 150 (2002)). Therefore, it was only in the unique context of *Second City* that we stated that the plaintiff's failure to secure a readily available license was a self-inflicted injury and thus not irreparable harm.

The better understanding of *Second City* is that the question of whether an injury is readily avoidable and truly self-inflicted if not avoided—and thus not irreparable harm—depends on the particular circum-stances of the case. A hypothetical that was discussed at oral argument illustrates this point. Suppose Steak N Shake's pricing policy required that all franchisees cut their prices by 50% or else face the ter-mination of their franchise agreements. Under those circumstances, Stuller could not readily avoid harm to

its business by choosing to implement the 50% pricing policy, because under that policy it would be impossible to viably operate. In that case, Stuller's choice not to implement the policy, leading to the termination of the franchises, would not be a true choice and could not be fairly categorized as a self-inflicted injury.

In response, Steak N Shake argues that its current pricing policy is not like that of the hypothetical because its current pricing policy would not harm Stuller's business and might actually be a more successful business model. Stuller strongly disagrees, and presents evidentiary support for the position that Steak N Shake's policy would harm its business. The district court did not analyze these competing claims, and it did not address whether the implementation of Steak N Shake's policy would harm Stuller's business.[1] The district court should have engaged in this analysis, but regardless, we can consider the record ourselves. See, e.g., *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1087 (7th Cir. 2008) (completing the preliminary injunction analysis if the record contains sufficient evidence); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997) (same); *see also Kidwell v. Eisenhauer*, 679 F.3d 957,

---

[1] The magistrate judge did weigh the competing claims and believed that Stuller would not suffer an irreversible financial impact if it implemented Steak N Shake's policy, while acknowledging the possibility of some negative impact. But the district court never adopted this portion of the magistrate judge's Report and Recommendation.

965 n.1 (7th Cir. 2012) ("[W]e may affirm on any basis that appears in the record."). Here, the record contains sufficient evidence to find, as a threshold matter, that Stuller would suffer irreparable harm if it was forced to implement Steak N Shake's pricing policy. Specifically, Stuller has presented evidence that the policy would be a significant change to its business model and that it would negatively affect its revenue, possibly even to a considerable extent. We acknowledge that Steak N Shake contests the validity and strength of the evidence presented by Stuller, but that argument goes to the "sliding scale analysis" conducted by a court in deciding to grant or deny a preliminary injunction, and not to Stuller's threshold requirements. In addition, if Stuller implemented Steak N Shake's policy and subsequently prevailed on the merits of its case, it would be difficult to reestablish its previous business model without a loss of goodwill and reputation. Because this is harm that cannot be "fully rectified by the final judgment after trial," it is irreparable. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).

In sum, we hold that Stuller has established its threshold requirement of showing it would suffer irreparable harm without a preliminary injunction. The district court then conducted a balance of the harms when granting the preliminary injunction, and we have no reason to conclude that the district court abused its

discretion in so doing.[2] Because the district court did not abuse its discretion in granting Stuller's motion for a preliminary injunction, the opinion of the district court is AFFIRMED.

---

[2] We also note that a review of the district court's docket sheet indicates that the district court issued an opinion on July 12, 2012 denying Steak N Shake's motion for summary judgment on all the claims, granting Stuller's motion for summary judgment on Count I, and denying Stuller's motion for summary judgment on Count II and setting a trial date in September on the issue of damages. Because Stuller's case now has a greater likelihood of success, the balance of harms when granting an injunction weighs even more in Stuller's favor. *See Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086 ("'[T]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'") (quoting *Roland Mach. Co.*, 749 F.2d 380, 387 (7th Cir. 1984))).