In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2211

WESTERN ILLINOIS SERVICE COORDINATION, *et al.*,

*Plaintiffs-Appellants*,

*v.*

ILLINOIS DEPARTMENT OF HUMAN SERVICES, *et al.*,

*Defendants-Appellees*,

*v.*

PRAIRIELAND SERVICE COORDINATION, INC., *et al.*,

*Intervening Defendants-Appellees*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:19-cv-3127 — **Richard Mills**, *Judge*.

ARGUED SEPTEMBER 25, 2019 — DECIDED OCTOBER 23, 2019

Before FLAUM, SYKES, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Circumstances often change as time passes. And changed circumstances can have consequences in litigation. This appeal presents a good example. Our review is limited to the denial of a preliminary injunction,

which sought to prevent an event—the shift in the award of state contracts for the provision of case management services as part of Illinois's Medicaid program. That transition occurred on July 1, 2019. During oral argument, the plaintiffs—parties to the former contracts—acknowledged that it would be too disruptive to rewind the clock by somehow attempting to reinstate those contracts. So, too, did they confirm that they now seek different forms of relief. In these circumstances, the present appeal is moot, so we dismiss it and remand for further proceedings.

## I

### A

The contracts at issue relate to Illinois's administration of its Medicaid program. The Medicaid statute establishes a system through which the federal government provides financial assistance to states to furnish medical care to low-income individuals. To receive funds, states must comply with various requirements, which the federal government oversees through a division of the U.S. Department of Health and Human Services. Today all 50 states participate in Medicaid, which provides medical coverage for over 65 million people nationwide.

The Medicaid program allows states to provide certain home-based services to participants. States do so by choosing to participate in what is known as the Home and Community Based, or HCBS, waiver program. See 42 U.S.C. § 1396n(c). The program is considered a waiver program because, when a state's application is approved, the federal government waives certain Medicaid requirements that would otherwise apply. See *Steimel v. Wernert*, 823 F.3d 902, 906–07 (7th Cir.

2016) (explaining the rationale behind HCBS waivers in greater detail). Most significantly, waivers eliminate the requirement that services be provided in an institution. They also do away with some of Medicaid's uniformity rules, allowing states to target specific geographic areas or certain groups of people at risk of institutionalization. See 42 U.S.C. § 1396n(c)(3).

Illinois currently operates nine waivers, including one for adults with developmental disabilities overseen by the Division of Developmental Disabilities within the Illinois Department of Human Services. Under this waiver, Illinois contracts with non-profit organizations to provide case management services for adults with developmental disabilities receiving home- and community-based services as part of Medicaid. Organizations that provide these case management services are known as Independent Service Coordination agencies, sometimes shorthanded ISCs.

In the past, Illinois had contracted with 17 ISCs, which operated in as many regions throughout the state. Illinois awarded the contracts through a noncompetitive, annual renewal process. The three plaintiff agencies before us had received contracts and provided case management services to Medicaid participants for at least 25 years. This all changed when, in September 2018, the state announced a new competitive bidding process for the contracts that would begin on July 1, 2019. The plaintiff agencies submitted bids but learned on January 2 that their existing contracts would not be renewed. The new contracts went into effect on July 1, and administrative services are now being provided by eight agencies operating in 12 regions across Illinois.

B

The three plaintiff agencies and three individual plaintiffs—their former clients—filed suit on May 16, 2019. Invoking 42 U.S.C. § 1983, they allege a violation of the Medicaid Act, contending that they, as ISCs, are covered by Medicaid's free-choice-of-provider provision, which requires that Medicaid recipients be allowed to select any qualified provider for their services. See 42 U.S.C. § 1396a(a)(23); see also *Planned Parenthood of Indiana, Inc. v. Comm'r of Ind. State Dept. Health*, 699 F.3d 962, 978 (7th Cir. 2012) (explaining the operation of Medicaid's free-choice-of-provider provision). The plaintiffs' position is straightforward: Illinois's awarding of the new contracts to new ISCs meant that the adults with developmental disabilities who were receiving case management services would no longer be able to choose their ISC and instead would have to transition to one of the new contract recipients. The plaintiffs, in short, see Illinois's switch to a competitive bidding process as unlawfully blocking their freedom to choose a provider of case management services. Alongside their Medicaid claim, the plaintiffs also brought claims under Illinois administrative law.

On June 5, 2019, knowing the new contracts were set to go into effect in less than 30 days, the plaintiffs sought a preliminary injunction. They wanted to prevent the new contracts from taking effect on July 1 and instead leave all existing contracts in place. The district court denied the plaintiffs' motion on June 25, concluding that they were unlikely to succeed on the merits of either their federal or state claims. The court reasoned that, as providers of administrative services but not medical services, ISCs like the plaintiffs were not "qualified providers" within the meaning of the Medicaid statute and

therefore were not covered by the enactment's free-choice-of-provider provision. In so concluding, however, the court recognized that the implementation of the new contracts would cause irreparable harm to both the plaintiff agencies and individual plaintiffs, who would lose all or most of their funding and be forced to switch case managers.

The plaintiffs appealed the denial of the preliminary injunction that same day. Four days later, on June 27, the plaintiffs filed a motion for emergency injunctive relief pending appeal in this court. We denied that motion on June 28, and the new contracts went into effect as scheduled on July 1.

## II

### A

We put the appeal on our fall calendar and heard oral argument on September 25. During oral argument, we asked what relief plaintiffs were seeking now that the new contracts had taken effect. Plaintiffs' counsel responded by explaining that the former agencies were not asking us to vacate the new contracts and reinstate the old agreements. To her credit, plaintiffs' counsel candidly acknowledged that reversing course at this point this would be too disruptive, particularly to the Medicaid participants with developmental disabilities who receive case management services. While we are not certain what injunctive relief the plaintiffs now desire, it is clear that the passage of time and the new contracts taking effect have caused plaintiffs to revisit their prior request for preliminary injunctive relief. Indeed, plaintiffs' counsel made plain during oral argument that her clients are not seeking outright reversal of the district court's decision denying the preliminary injunction.

For their part, defendants represented that the new con-
tracts went into effect on July 1 as planned. We also learned
that the intervenors—two of the new agencies presently un-
der contract—have hired many of the same case managers
who had been employed by the previous agencies. While
there have likely been some bumps along the road, nothing in
the record before us or conveyed at oral argument suggests
any material issues or shortcomings in the new agencies' im-
plementation of case management services for the individuals
covered under this Medicaid program.

B

The parties' briefing understandably focused on the mer-
its issue of whether the plaintiff ISCs constituted qualified
providers and thus were covered by Medicaid's free-choice-
of-provider provision. But with the plaintiffs no longer chal-
lenging the denial of their preliminary injunction, we do not
have to decide that question. We can avoid tracing the statu-
tory interpretation of "qualified providers" or determining
what kinds of services the plaintiff agencies provide. The pas-
sage of time has rendered the issue—embodied entirely as it
is in the district court's denial of the plaintiffs' request for a
preliminary injunction—moot.

Mootness roots itself in Article III's case or controversy
limitation, leaving us "without power to decide questions that
cannot affect the rights of litigants in the case before [us]."
*North Carolina v. Rice*, 404 U.S. 244, 246 (1971). By its terms,
this appeal extends no further than the plaintiffs' challenge to
the district court's denial of their request for preliminary in-
junctive relief to stop the new contracts from taking effect. Not
only has that event occurred, the plaintiffs have made clear
that they are not asking us to unwind it. They acknowledge it

would be difficult and likely even more harmful to their cli-
ents to change course once again, particularly in the absence
of evidence showing that any of the new ISCs have dropped
the ball in their provision of case management services.

We are without jurisdiction to go further. This appeal is
moot. The proper course, then, is to dismiss the appeal and
allow the case to return to the district court, where plaintiffs,
if they so choose, will be free to continue to litigate the merits
of their claims and where management of next steps will re-
main in the sound discretion of the district court. See *Gjertsen
v. Bd. of Election Comm'rs of City of Chi.*, 751 F.2d 199, 202 (7th
Cir. 1984) (explaining that when a preliminary injunction un-
der appeal has become moot but the case itself has not, "the
usual practice is just to dismiss the appeal as moot and not
vacate the order appealed from").

In these circumstances, then, we DISMISS the appeal.