In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-3101

DM TRANS, LLC d/b/a
ARRIVE LOGISTICS,

*Plaintiff-Appellant,*

*v.*

LINDSEY B. SCOTT, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-03634 — **Harry D. Leinenweber**, *Judge.*

ARGUED APRIL 21, 2022 — DECIDED JUNE 28, 2022

Before EASTERBROOK, ROVNER, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* DM Trans, LLC (which does business as Arrive Logistics, or "Arrive") and Traffic Tech, Inc. compete to help customers coordinate shipments of goods. Six employees at Arrive departed for Traffic Tech despite restrictive covenants. Arrive sued the six individuals and Traffic Tech for injunctive relief, claiming irreparable harm

because the individuals had breached their restrictive covenants and misappropriated trade secrets. The district court sided with the defendants and denied Arrive's motion for a preliminary injunction. Because Arrive has an adequate remedy at law for each of its claimed injuries, and therefore faces no irreparable harm, we affirm the denial of injunctive relief.

## I

### A.  Factual Background

Arrive and Traffic Tech are rivals in the third-party logistics industry. Brokers such as Arrive and Traffic Tech serve as middlemen tasked with arranging certain details of agreements between customers (who ship goods) and carriers (who transport them). The brokers submit bids to customers, many of which solicit bids from multiple brokers.

Both Arrive and Traffic Tech employ more than one hundred entry-level sales representatives in the Chicago area, and they retain many more nationwide. Those employees often contact potential customers to ask for their business. Beyond Arrive and Traffic Tech, hundreds of third-party logistics companies compete with one another just in the Chicago area.

Between 2017 and 2019, each of the six individual defendants—Lindsey Scott, Frank Hernandez, Matthew Duffy, Bryan Klepperich, Jake Hoffman, and Scott Mayer— joined Arrive as an entry-level employee. Though their job titles differed slightly, a significant proportion of each individual defendant's responsibilities was to cold call potential customers (other than Duffy, who worked on pricing). While employed at Arrive, the six individuals sought

management-level positions and raises that Arrive was not willing to provide.

All six individuals had access during their employment to Arrive's software platform, called Accelerate. Accelerate contained information about customers, including their contact information, buying history and trends, and preferences. Arrive began to use Accelerate in March 2020, around the onset of the COVID-19 pandemic. Accelerate was updated continuously with new data such as shipment information and sales metrics. As time passed the same type of information remained on Accelerate, though in near-real time, new data—such as shipments and employee sales metrics—were added. Because Arrive's employees began working remotely during the early stages of the pandemic, they used personal devices for all work-related tasks from that point forward, including tasks that involved accessing and using Accelerate. Arrive did not request that the six individuals delete company data from their personal devices upon their departure from the company, a point to which we will return.

When each individual defendant joined Arrive, he or she was required to sign an employment agreement containing restrictive covenants. Those agreements included non-competition provisions (lasting for six months after the termination of employment) and non-solicitation provisions (lasting for twelve months after the same date).

At different times between December 2020 and January 2021, Arrive required the individual defendants to sign updated employment agreements ("the 2020–21 employment agreements"), which included new restrictive covenants. The 2020–21 employment agreements provided for the same

temporal non-competition and non-solicitation obligations as the previous agreements. The updated non-competition provisions prohibited the employees from "[e]ngag[ing] or participat[ing] in the rendering of services which are the same or similar to the services Employee provided over the last two … years of employment with the Company in any aspect of the Business in the Territory," which as defined in the agreements consists of the 48 contiguous states and the District of Columbia. Additionally, the 2020–21 employment agreements stated: "In the event of any breach by Employee of [the non-competition or non-solicitation obligations], the time periods of such restrictive covenants shall be further extended in an amount equal to the time period of the breach."

The 2020–21 employment agreements also contained a broad arbitration provision under which all disputes—other than actions filed by Arrive or its affiliates, seeking injunctive relief—must be settled by binding arbitration. The parties do not contest the validity of this arbitration provision.

Throughout spring 2021, each of the individual defendants resigned from Arrive and joined Traffic Tech. Lindsey Scott was the first to learn about an opportunity at Traffic Tech when a third-party recruiter contacted her. Scott's offer from Traffic Tech afforded her a more attractive job title, greater responsibility, and approximately $50,000 in additional compensation than her position at Arrive. She started at Traffic Tech on May 3, 2021.

The remaining individual defendants (aside from Duffy) also learned of job opportunities at Traffic Tech through a

third-party recruiter.[1] Nearly all the individual defendants were offered more senior positions at Traffic Tech.

### B. Procedural History

Arrive, headquartered in Texas, filed its original complaint in June 2021 against five of the individual defendants in the United States District Court for the Western District of Texas; neither Hoffman nor Traffic Tech was sued. The complaint alleged the defendants had breached their contractual obligations under the 2020–21 employment agreements. It also alleged violations of the federal Defend Trade Secrets Act; violations of the Texas Uniform Trade Secrets Act; and tortious interference with current and prospective customer relations and business relations.

Arrive's original complaint sought injunctive relief in several respects, including prohibiting the individual defendants from working for Traffic Tech or any other company providing services in the third-party logistics industry within the nation's 48 contiguous states. Along with its complaint, Arrive moved for a temporary restraining order.

After a telephonic hearing, the Texas district court denied Arrive's request for a TRO. That court ordered the parties to brief a jurisdictional issue, as well as conduct expedited discovery, in advance of an expected preliminary-injunction hearing. In the meantime, the court granted the defendants' motion to transfer the case to the United States District Court for the Northern District of Illinois.

---

[1] Duffy had previously worked for Traffic Tech and was contacted by a former colleague about returning there.

Arrive then filed its operative Second Amended Complaint, adding Traffic Tech as a defendant and including new allegations of tortious interference with contract and unjust enrichment against Traffic Tech. The next month, Arrive moved for a preliminary injunction. Following the completion of expedited discovery and a hearing, the Illinois district court denied injunctive relief in an opinion and order.

Applying Texas contract law, the court concluded that Arrive was unlikely to succeed on the merits of its breach of contract claims because the individual defendants' non-solicitation and non-competition obligations were likely unenforceable. Likewise, the court explained that Arrive had a low probability of success on its trade secrets claims because it had not sufficiently identified the purported trade secrets or taken reasonable steps to maintain the secrecy of its information. The district court also found insufficient evidence of irreparable harm. Finally, the court reasoned that the balance of harms favored the individual defendants, because in its view an injunction would functionally require them to stop working for Traffic Tech. Arrive now appeals that denial of Arrive's preliminary injunction motion.

## II

We begin with jurisdiction. The parties are correct that the district court had federal question jurisdiction over the claims for injunctive relief under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3), and supplemental jurisdiction over Arrive's state-law claims under 28 U.S.C. § 1367. But there are two additional concerns: the appealability of the court's order denying injunctive relief, and mootness.

### A. Appeals from the Denial of Injunctive Relief

Though the parties do not dispute that the district court's denial of injunctive relief may be appealed, "federal courts have an independent obligation at each stage of the proceedings to ensure that they have subject matter jurisdiction over the dispute." *Olson v. Bemis Co.*, 800 F.3d 296, 300 (7th Cir. 2015) (citations omitted). Under 28 U.S.C. § 1292(a)(1), this court has jurisdiction to adjudicate an appeal from a district court's order "refusing" to issue a preliminary injunction, even where no final judgment has issued. That statute is a limited exception to the final-judgment rule, and we construe it narrowly. *Albert v. Trans Union Corp.*, 346 F.3d 734, 737 (7th Cir. 2003). Where the district court's order "stripped the case of its equitable component," the Court of Appeals has jurisdiction to consider an interlocutory appeal based on the denial of injunctive relief. *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 812 (7th Cir. 2018) (citation omitted).

Here, the district court's order denied Arrive's motion for a preliminary injunction in full. The court did not qualify its order by stating that any claims remained pending before it, and the parties do not contest that the order disposed of each of Arrive's claims for injunctive relief. Thus, the district court stripped the case of its equitable component,[2] and we have appellate jurisdiction under 28 U.S.C. § 1292(a).

---

[2] By the terms of the 2020–21 employment agreements, Arrive's requests for injunctive relief constitute the sole component of the disputes between Arrive and the individual defendants that may be resolved through litigation, rather than by arbitration.

### B. Mootness

The defendants also contend that certain aspects of this appeal are moot. Because Article III forbids federal courts from deciding moot questions or abstract propositions, mootness is a jurisdictional inquiry that must be resolved at the outset of an appeal. *Stone v. Bd. of Election Comm'rs for City of Chicago*, 643 F.3d 543, 545 (7th Cir. 2011) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). If our court cannot grant the litigants any effectual relief, the appeal is moot, *W. Ill. Serv. Coordination v. Ill. Dep't of Hum. Servs.*, 941 F.3d 299, 302 (7th Cir. 2019), and we are to vacate the order under review and remand with instructions to dismiss for lack of jurisdiction. *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 674 (7th Cir. 2019) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950)).

Where an appeal involves multiple distinct issues, a single issue may become moot while the remainder of the dispute between the parties does not. *Home Care Providers, Inc. v. Hemmelgarn*, 861 F.3d 615, 621 (7th Cir. 2017) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 393–94, 398 (1981)). The defendants argue that aspects of this case are moot, so they bear the burden of persuasion on that point. *Id*. at 620–21 (citation omitted); *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 383 (7th Cir. 2018).

The defendants offer two reasons why Arrive's claims for breach of contract under Texas law are moot. First, the non-competition provisions of the individual defendants' restrictive covenants have expired, while the non-solicitation provisions have lapsed for each individual defendant except Duffy. Second, the defendants represent that three of the

individual defendants are no longer employed at Traffic Tech, which they believe renders moot the breach-of-contract claims against those defendants.

Arrive disagrees. It cites the tolling provision of the 2020–21 employment agreements, which purports to extend the effective time period of the restrictive covenants "in an amount equal to the time period of the breach." According to Arrive, there is a live controversy regarding whether the individual defendants should be enjoined from breaching the restrictive covenants. Even if the tolling provision is unenforceable, Arrive contends, this court should use its equitable power to extend the effective time periods of the restrictive covenants. With respect to the individual defendants who no longer work for Traffic Tech, Arrive argues the claims for breach of contract are also not moot. In the absence of an injunction, those individual defendants could work for Traffic Tech once again, or they could violate their restrictive covenants while employed at another third-party logistics company.

The first mootness issue is the closer of the two. In the defendants' view, Texas law renders the tolling provisions in the restrictive covenants unenforceable, while Arrive interprets Texas law differently. Ultimately, that question need not be resolved because, under Texas law, "a district court may exercise its equitable power to craft an injunction that extends beyond the expiration of the covenant not to compete." *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 158 (5th Cir. 2017) (citing *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003)); *see also Premier Indus. Corp. v. Tex. Indus. Fastener Co.*, 450 F.2d 444, 448 (5th Cir. 1971) ("Appellants' argument that the trial judge

exceeded his discretion by enjoining the appellants beyond the time specified in the … contract is without merit."). Texas intermediate appellate courts have likewise observed that state law gives trial courts the equitable authority to extend the duration of restrictive covenants. *See Sadler Clinic Ass'n, P.A. v. Hart*, 403 S.W.3d 891, 898–99 (Tex. App. 2013); *Farmer v. Holley*, 237 S.W.3d 758, 761 (Tex. App. 2007).

Thus, the expiration of the time period of a former employee's restrictive covenants does not render moot an employer's request for an injunction to prevent the former employee from violating those restrictive covenants. *Guy Carpenter*, 334 F.3d at 464. If we were to remand this case to the district court, that court would have equitable authority to enjoin the individual defendants even if the tolling provision of the 2020–21 employment agreements were unenforceable under Texas law. *See id*.

As for the second mootness issue, a court could still grant Arrive effectual relief in the form of an injunction, even though certain individual defendants no longer work for Traffic Tech. Injunctive relief could prohibit them from violating their restrictive covenants, either as employees of Traffic Tech (if they were to be rehired there) or as employees of another Arrive competitor in the third-party logistics industry.

In sum, the defendants have not carried their burden of persuasion to show the appeal is moot as to Arrive's claims for breach of contract. *See Home Care Providers*, 861 F.3d at 620–21; *Portalatin*, 900 F.3d at 383. We have jurisdiction over this appeal in its entirety.

**III**

We review a district court's decision to deny a preliminary injunction for abuse of discretion. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). "Absent legal or factual errors, we afford 'great deference' to the court's decision." *Id.* (citation omitted); *see also Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (same). Within this context, the district court's legal conclusions are reviewed de novo, and its findings of fact are reviewed for clear error. *Stuller, Inc.*, 695 F.3d at 678.

To obtain a preliminary injunction, the moving party must show that it is likely to succeed on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm in the absence of an injunction. *Life Spine*, 8 F.4th at 539. The moving party's likelihood of prevailing on the merits must exceed "a mere possibility of success." *Id.* at 540 (quoting *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020)). A finding of irreparable harm to the moving party, if the injunction is denied, is "a threshold requirement for granting a preliminary injunction." *Id.* at 545; *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). Harm is irreparable if legal remedies available to the movant are inadequate, meaning they are seriously deficient as compared to the harm suffered. *Life Spine*, 8 F.4th at 545.

Because irreparable harm is a threshold requirement for granting injunctive relief, we first analyze whether the district court erred in concluding Arrive had not shown irreparable harm. If the district court did not err in that respect, it was within its discretion to deny the requested injunction. *See Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1440–41 (7th Cir. 1986) (affirming the district court's denial of a

preliminary injunction based on the absence of irreparable harm alone).

Arrive offers two reasons for why it faces irreparable harm in the absence of an injunction. First, it contends the lost sales and business opportunities arising from the individual defendants' alleged breaches of their restrictive covenants are incalculable. Second, Arrive submits that the individual defendants' use of its confidential information is a separate, independent form of irreparable harm. After considering these arguments, we discuss the impact of Arrive's failure to request the deletion of allegedly confidential information on its assertion of irreparable harm.

## A. Lost Profits and Lost Opportunities

Arrive argues that lost sales, which are traceable to employees' violations of restrictive covenants, invariably qualify as irreparable harm to the former employer. In support of its argument, Arrive relies primarily on *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630 (7th Cir. 2005), and *Turnell v. CentiMark Corp.*, 796 F.3d 656 (7th Cir. 2015). The defendants counter that lost sales generally do not constitute irreparable harm, particularly where business records enable the plaintiff corporation to calculate the amount of lost sales. According to the defendants, the record contains more than enough evidence to support the district court's factual finding that money damages could compensate Arrive for lost sales attributable to their actions.

Our court recently observed that "harm stemming from lost customers or contracts may be quantifiable if the lost customers or contracts are identifiable." *Life Spine*, 8 F.4th at 546. The district court noted that Traffic Tech identified

thirteen discrete customers who had contact with the individual defendants and provided sales to Traffic Tech; two of those customers transferred business to Traffic Tech for reasons conceded to be unrelated to any violation of the restrictive covenants at issue. For the remaining eleven customers, the district court found the technology and recordkeeping capabilities of Arrive and Traffic Tech would make it "a straightforward process to calculate whether sales volumes of any of the eleven businesses moved from Arrive and to Traffic Tech."

Where an appellant's argument for reversing a district court's ruling on a preliminary injunction motion concerns a factual finding, the appellant must meet the demanding clear-error standard. *See id*. at 539, 541–42. The pertinent question is whether the district court clearly erred in finding that the customers at issue, and Arrive's lost sales and profits with respect to those customers, were identifiable. Yet on appeal, Arrive does not show the district court erred, much less clearly erred, in making these findings. Arrive fundamentally fails to engage with the district court's analysis. The company does not discuss the eleven discrete customers identified by Traffic Tech and the district court. Nor does it meaningfully explain why the court was wrong to reason that the differences in sales—between the periods before and after the individual defendants left Arrive and joined Traffic Tech— could easily be calculated.

The two cases on which Arrive relies, *Hess Newmark* and *Turnell*, are inapposite. Here, the parties can identify the eleven customers and calculate the extent to which they shifted their business from Arrive to Traffic Tech following the individual defendants' departure from Arrive. In *Hess*

*Newmark*, a principal in a movie-promotion firm violated her restrictive covenant by diverting business opportunities to the firm's rival and assisting the rival in setting up new offices. 415 F.3d at 631–32. This court held that the harm to the firm was irreparable because "[c]ompetition changes probabilities" such that "[the firm] will not be able to identify which contracts slipped from its grasp." *Id*. at 632–33. But here, probabilities are not at issue because the parties were able to identify the eleven customers which had transferred specific volumes of business from Arrive to Traffic Tech. Thus, *Hess Newmark* does not assist Arrive.

In *Turnell*, a high-level executive in the commercial-roofing business (Turnell) accepted a position with a competitor after his employer fired him. By accepting the new position and soliciting customers on behalf of his former employer's competitor, Turnell violated his restrictive covenants. *See* 796 F.3d at 659–60. The district court entered a relatively narrow preliminary injunction, *id*. at 660–61, and this court found no abuse of discretion and affirmed. *Id*. at 662, 667. Importantly, even after Turnell appealed, "[n]either party ha[d] quantified" the harm to the former employer stemming from lost customer relationships and proprietary information. *Id*. at 666. By contrast, both Traffic Tech and the district court have posited a straightforward method for quantifying the financial harm to Arrive that is traceable to the individual defendants' allegedly wrongful solicitation of the eleven at-issue customers. Arrive has not meaningfully contested the quantifiability of those losses. *Turnell* is thus also not on point.

Further, Arrive submits that it suffers irreparable harm because it loses "a potential opportunity" whenever a

prospective customer speaks with the individual defendants and Traffic Tech, rather than Arrive, about potentially handling a shipment. According to Arrive, this harm is impossible to quantify—and thus irreparable—as it includes the loss of opportunities to bid on shipments that are ultimately not handled by either Arrive or the defendants. The defendants respond that Arrive forfeited this "lost opportunities" argument, which they also contend is incorrect on the merits.

The defendants are correct that Arrive forfeited its argument regarding lost opportunities. Issues and arguments raised for the first time on appeal are forfeited, as are arguments that are not sufficiently developed. *Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019); *see also Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 916 (7th Cir. 2005) (requiring citation to relevant authority and meaningful argument to defeat forfeiture). Though Arrive briefly mentioned the word "opportunities" in its motion for injunctive relief, it did not cite pertinent authority (such as *Hess Newmark*) or offer any meaningful reasoning relating to the argument it now advances.

Even if this argument had not been forfeited, lost opportunities cannot support a showing of irreparable harm under the circumstances presented here. The type of harm Arrive alleges would ultimately translate into lost profits, albeit indirectly, as in the end there is no economic value to opportunities that are not converted to sales. Resisting this reasoning, Arrive points to the deposition testimony of its corporate representative, Scott Sandager. But Sandager merely offered the conclusory statement that "every time Lindsey [Scott] talks to a shipper that we've walked through,

could be an opportunity where previously they would have talked to Arrive. So it's really very challenging to indicate that." This testimony reflects an inadmissible legal conclusion which restates the legal argument Arrive now advances.[3] Sandager's testimony does not serve as competent evidence that explains how lost opportunities, which do not ultimately translate into agreements to handle shipments, could qualify as irreparable harm traceable to the defendants' actions.

A district court is within its discretion to find an adequate remedy at law, and thus no irreparable harm, where the corporation seeking injunctive relief can reasonably estimate the value of its lost profits. *Lawson Prods.*, 782 F.2d at 1440. Arrive does not dispute that it can reasonably estimate the value of profits it lost from the business the eleven customers at-issue transferred to Traffic Tech. The district court was therefore within its discretion to conclude monetary damages were an adequate remedy at law.

### B.  Use of Confidential Information

Arrive also asserts that, beyond lost sales and profits, the defendants' use of Arrive's confidential information itself qualifies as irreparable harm. For that proposition, Arrive cites only two district-court cases: *Aon PLC v. Infinite Equity, Inc.*, 2021 WL 4192072 (N.D. Ill. Sept. 15, 2021), and *Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115 (N.D. Ill. 2019). Like here, those cases involved claims for breach of contract and misappropriation of trade secrets brought by corporations against former employees and their new employers. In

---

[3] *Cf. Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (observing that a witness's testimony "as to legal conclusions that will determine the outcome of the case is inadmissible").

finding that a likelihood of irreparable harm had been shown, both courts reasoned it would not be possible to determine the costs the plaintiff company incurred—or the defendant company avoided—to learn about client needs and preferences. *Aon*, 2021 WL 4192072, at *26–28; *Vendavo*, 397 F. Supp. 3d at 1144.

To begin, Arrive argues as though *Aon* and *Vendavo* are binding authority on this court, which of course they are not. A district court's decision "does not have stare decisis effect; it is not a precedent." *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 457 (7th Cir. 2005) (citations omitted). "It may be a wise, well-reasoned decision that persuades by the quality of its reasoning, but … [t]he fact of such a decision is not a reason for following it." *Id*. at 458. We consider whether *Aon* and *Vendavo* are on point and persuasive on the proposition for which Arrive cites them.

*Aon* differs from this case in an important respect. There, the court relied on factual findings about the risk of "a complete loss" of client relationships in concluding that the defendants' use of confidential client information supported a finding of irreparable harm. 2021 WL 4192072, at *27 (citing *Foodcomm*, 328 F.3d at 304). But there is no evidence to support a complete loss of Arrive's client relationships. Arrive makes no such allegation.

*Vendavo* is not entirely on point either. The trial court's finding of irreparable harm there rested on its assessment that the former employee's new position would result in the "inevitable disclosure" of trade secrets. 397 F. Supp. 3d at 1142, 1144. By contrast, here the trial court examined the record and found Arrive had not sufficiently shown that any

of its proffered categories of information qualified as trade secrets. Moreover, the evidence before us does not support any assertion of the inevitable disclosure of trade secrets because the individual defendants' jobs at Traffic Tech were management-level positions for which their responsibilities differed significantly from those they had at Arrive. Just because the individual defendants remained in the third-party logistics industry does not mean they would inevitably disclose trade secrets.

To the extent the courts in *Aon* and *Vendavo* concluded or suggested that a former employee's use of confidential information is independently sufficient to support a finding of irreparable harm, we decline to adopt that analysis. Regardless of what costs were incurred or avoided in the past, a future threat of irreparable harm must exist to warrant injunctive relief. *See Lawson Prods.*, 782 F.2d at 1440–41. That is, the movant must show it "will suffer" irreparable harm in the absence of an injunction. *Stuller, Inc.*, 695 F.3d at 678. In some cases, a former employee's use of an employer's confidential information could support a finding of irreparable harm to the former employer. But there must be a causal mechanism to support such a finding. For instance, in a typical dispute of this sort, the former employee's use of confidential information could harm the employer by causing a loss of profits or customer relationships. In such a case, the employer must show the lost profits or lost customer relationships cannot be calculated with any reasonable degree of certainty. *See, e.g., Life Spine*, 8 F.4th at 545–46.

As just discussed, the only mechanism Arrive posits for how the individual defendants' use of Arrive's confidential information could give rise to future irreparable harm is

through lost sales and profits. Yet, those lost sales and profits relate to eleven identifiable customers, and they can be quantified using a straightforward process. So, Arrive's lost sales and profits do not support a finding of irreparable harm.

For these reasons, the district court was within its discretion to conclude that Arrive had an adequate remedy at law and would suffer no irreparable harm in the absence of an injunction. Because that "threshold requirement" for injunctive relief was not met, *Life Spine*, 8 F.4th at 545, the district court did not abuse its discretion in denying the requested preliminary injunction.[4] *See Lawson Prods.*, 782 F.2d at 1440–41.

### C. Arrive's Failure to Protect its Information

Arrive contends the defendants' use of its confidential information requires a finding of irreparable harm, and it argues the district court clearly erred in concluding otherwise. But the company's conduct upon the individual defendants' departures tells a different story.

Because of policies that Arrive put in place at the onset of the pandemic, the individual defendants had access to the Accelerate platform on their personal devices. Thus, as a result of Arrive's business decisions, the individual defendants were able to use their personal devices to retrieve and download the categories of information the company categorizes as trade secrets. Arrive does not contest this.

---

[4] The parties disagree about whether the district court erred in concluding that Arrive was not likely to succeed on the merits of its claims for breach of contract against the individual defendants. We do not address that dispute because we resolve this case on other grounds.

Nevertheless, a human resources manager conducted exit interviews of Scott, Mayer, Hernandez, and Hoffman without asking them to produce their personal devices for inspection, state whether they had company data on those devices, or remove company data. Defendants also maintain that they were willing to return or destroy the information Arrive characterizes as confidential, but they were unable to do so because of a litigation hold. Arrive failed to take basic steps to prevent the individual defendants from possessing its purportedly confidential information. So, the company's claim that their possession qualifies as irreparable harm rings hollow. Arrive could have prevented the claimed harm by taking greater care in executing information-security procedures prior to, or immediately following, the termination of the individual defendants' employment.[5] Even though Arrive failed to do so, the defendants have offered the company the opportunity to remedy the harm by turning over or destroying the information at issue. Arrive has evidently refused that offer. Accordingly, it cannot show

---

[5] As the district court noted, to succeed on a claim for misappropriation of trade secrets, a company must take reasonable measures to protect the secrecy of its information. This requirement is codified within the Defend Trade Secrets Act as part of the definition of the term "trade secret." 18 U.S.C. § 1839(3)(A). Courts evaluate the question of whether efforts to keep information confidential were sufficient "on a case-by-case basis, considering the efforts taken and the costs, benefits, and practicalities of the circumstances." *Tax Track Sys. Corp. v. New Inv. World, Inc.*, 478 F.3d 783, 787 (7th Cir. 2007); *see also Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179–80 (7th Cir. 1991). In some circumstances, judgment as a matter of law for defendants is appropriate because it is "readily apparent that reasonable measures simply were not taken." *Tax Track*, 478 F.3d at 787. This could be such a case, considering the facts.

irreparable harm arising from the defendants' alleged use of the information claimed to be confidential.

**IV**

Arrive focuses primarily on the district court's denial of injunctive relief on its claims for breach of contract and, to a lesser extent, its claims for misappropriation of trade secrets. Although the absence of irreparable harm independently precludes Arrive from obtaining a preliminary injunction based on those claims, for completeness we also consider whether the district court abused its discretion in balancing the relative harms. We discuss Arrive's tortious interference claims as well.

**A. Balancing of Harms**

If the movant makes the required threshold showings of irreparable harm and a likelihood of success on the merits, the court then weighs "the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted" and "the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties." *Turnell*, 796 F.3d at 662 (citations omitted). Under this "sliding scale" approach, "the more likely [the moving party] is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Id*. Unless the district court's legal conclusions were incorrect or its findings of fact were clearly erroneous, we afford the court's ultimate decision "great deference." *Life Spine*, 8 F.4th at 539; *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020).

In balancing the harms here, the district court reasoned that Arrive would potentially suffer moderate financial harm—much of which had already occurred by the time the preliminary injunction motion was ripe for decision—if the injunction were denied. On the other hand, the court believed the individual defendants "would be heavily harmed" because they would have to cease their work with Traffic Tech if an injunction were issued. Thus, the court concluded that the balance of harms favored the denial of injunctive relief, "particularly as there is a low likelihood of success on the merits" of Arrive's claims for breach of contract and misappropriation of trade secrets.

On appeal, Arrive asserts the district court abused its discretion when balancing the harms. According to Arrive, the court failed to sufficiently acknowledge the possibility that Traffic Tech could have assigned the individual defendants to work "outside of the continental United States," or it could have exclusively allocated them tasks related to "service offerings that Arrive does not provide its customers."

That argument does not persuade. It would be highly impractical for the individual defendants to work for Traffic Tech outside the continental United States, so the district court did not abuse its discretion when it did not seriously consider that possibility. Similarly, the record belies Arrive's assertion that the requested injunction would not have put the individual defendants out of work since they could have been employed with Traffic Tech in a different capacity. Upon joining Traffic Tech, the individual defendants had management-level responsibilities, which were quite different from those they held at Arrive. Nevertheless, Arrive

sued them. And during this litigation Arrive has attempted to emphasize any minor or tangential similarities in job duties. This indicates the district court was correct to conclude that the injunction Arrive requested would have functionally rendered the individual defendants unemployed.

Arrive required the individual defendants to sign broad restrictive covenants. While litigating this case, Arrive has taken aggressive positions that, if accepted, would strain the limits of those contracts. We do not rule on whether the restrictive covenants are enforceable. Yet, when balancing the relative harms, the district court was well within its discretion to consider and weigh the deleterious effects that an injunction enforcing the restrictive covenants against the individual defendants would impose on them. *See Life Spine*, 8 F.4th at 546 (affirming the district court's balancing of harms).

Nor do Arrive's other arguments about the district court's balancing of harms fare any better. The company contends the court abused its discretion by noting Arrive had already suffered much of its claimed economic harm by the time the court decided its motion. But Arrive cites no authority for the proposition that a trial court may not consider whether harm to the movant has already occurred, as opposed to having the potential to occur in the future. To the contrary, the court's interpretation is consistent with our case law requiring a party moving for injunctive relief to show it "will suffer" irreparable harm in the absence of such relief. *Speech First*, 968 F.3d at 637; *Stuller, Inc.*, 695 F.3d at 678.

And again, Arrive cannot rely on the defendants' alleged use of confidential information to show irreparable harm

when that purported harm would not have been possible but for the company's own carelessness. Arrive failed to take basic steps to ensure that the individual defendants would not have access to confidential information after their employment, and it has declined their offer to return or destroy such information during this litigation. These weaknesses in Arrive's assertion of irreparable harm further support the conclusion that the district court acted within its discretion in balancing the relative harms.

Our decision today does not foreclose Arrive's ability to recover from the individual defendants. Under the 2020–21 employment agreements, Arrive's claims against the individual defendants are subject to arbitration. Those proceedings are currently pending, and the merits of the disputes will be resolved in that forum. Before the arbitrator, Arrive will have ample opportunity to offer proof as to the extent of the economic harms it has suffered. But given the balance of harms, the district court was within its discretion to deny injunctive relief.

## B. Tortious Interference Claims

Finally, we assess Arrive's claims for tortious interference. Two sets of claims are at issue: tortious interference with current and prospective economic advantage (against all defendants) and tortious interference with contract (against Traffic Tech). These claims were pleaded in the Second Amended Complaint, and briefed in Arrive's preliminary injunction motion, but they were not decided by the district court. The district court did not give a reason why it did not address these claims, nor have we located such a reason in the record.

Although the district court should have decided Arrive's tortious interference claims, this omission does not alter our decision to affirm the denial of the preliminary injunction for two reasons. First, in advancing these claims, Arrive alleges the same type of harm as with its breach of contract and trade secrets claims—lost profits, diminished customer relationships, and the use of Arrive's confidential information. Because those harms are not irreparable, for the reasons previously discussed, the district court did not abuse its discretion by declining to issue an injunction to halt the alleged tortious interference. Second, the district court carefully balanced the harms. Under that balancing analysis, the district court was within its discretion to deny an injunction to preserve the individual defendants' ability to earn a living.

The tortious interference claims against the individual defendants, then, are likewise subject to arbitration under the 2020–21 employment agreements. Still, this does not preclude Arrive from recovering monetary damages against Traffic Tech.

**V**

We have jurisdiction to hear this appeal from the denial of a motion for a preliminary injunction. The entire appeal presents a live controversy because under Texas law, the district court had equitable authority to extend the terms of the individual defendants' restrictive covenants.

Arrive has failed to meet the threshold requirement of irreparable harm. The district court did not err in concluding that lost sales and profits, which allegedly resulted from the defendants' wrongful conduct, could be compensated

through monetary damages. Nor did Arrive show irreparable harm through lost opportunities or the individual defendants' use of confidential information, both of which are harms that would ultimately manifest in the form of calculable lost sales and profits. Thus, there was no irreparable harm, and the district court was correct to deny the requested injunction. Further, even if Arrive had shown irreparable harm, the trial court did not abuse its discretion in balancing the relative harms.

For these reasons, we AFFIRM the district court's denial of the motion for a preliminary injunction.