In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
Nos. 21-3328 & 22-1004
GEFT OUTDOOR, LLC,
 Plaintiff-Appellant/Cross-Appellee,
 v.

MONROE COUNTY, INDIANA and MONROE COUNTY BOARD OF
ZONING APPEALS,
 Defendants-Appellees/Cross-Appellants.
 ____________________

 Appeal from the United States District Court for the
 Southern District of Indiana, Indianapolis Division.
 No. 1:19-cv-1257 — James R. Sweeney, II, Judge.
 ____________________

 ARGUED SEPTEMBER 19, 2022 — DECIDED MARCH 9, 2023
 ____________________

 Before WOOD, SCUDDER, and JACKSON-AKIWUMI, Circuit
Judges.
 SCUDDER, Circuit Judge. Before us are cross-appeals relat-
ing to a permanent injunction preventing Monroe County, In-
diana from enforcing some of its zoning laws with respect to
signs—including commercial billboards. GEFT Outdoor, a
billboard company, sued Monroe County because the County
did not allow the installation of a digital billboard along I‑69.
2 Nos. 21-3328 & 22-1004

The district court agreed with many of GEFT’s claims, enter-
ing summary judgment in the company’s favor and enjoining
several provisions of the County’s sign ordinance.
 On appeal GEFT wants the injunction to go even further
by blocking Monroe County from enforcing every last sign
regulation on the books. We decline to take this step and agree
with the district court’s decision to limit the injunction to only
the unconstitutional provisions of the County’s sign ordi-
nance. For its part, the County cross-appeals to seek reinstate-
ment of its variance procedure, which authorizes the local
Board of Zoning Appeals to approve signs on a case-by-case
basis that do not meet structural sign restrictions relating to
height, size, and digital content. We agree and vacate this por-
tion of the district court’s injunction.
 I
 A
 When GEFT filed its lawsuit, anyone in Monroe County
wanting to build a sign had to first apply for a permit. See
Monroe County, Ind., Code § 807‑3 (2019). The County would
grant a permit “[i]f the proposed sign [was] in compliance
with all of the requirements of th[e] zoning ordinance.” Id.
§ 807‑3(B). The sign ordinance included size limits, see id.
§ 807‑6(D); height restrictions, see id. § 807‑6(F)(1); setback re-
quirements (so that signs could not be too close to a road), see
id. § 807‑6(F)(3); a ban on changeable-copy (or digital) signs,
see id. § 807‑6(B)(2); and a prohibition on off-premises com-
mercial signs, see id. § 807‑6(B)(5). The County’s ordinance
provided exceptions to the permit requirement for govern-
ment signs and certain noncommercial signs. See id.
§ 807‑3(C).
Nos. 21-3328 & 22-1004 3

 If a proposed sign was ineligible for a permit, the person
wanting to erect the sign could apply to the Board of Zoning
Appeals for a use variance. To grant a variance, the Board
needed to find that:
 (A) the approval will not be injurious to the
 public health, safety, and general welfare
 of the community;
 (B) the use and value of the area adjacent to
 the property included in the variance
 will not be affected in a substantially ad-
 verse manner;
 (C) the need for the variance arises from
 some condition peculiar to the property
 involved;
 (D) the strict application of the terms of the
 Zoning Ordinance will constitute an un-
 necessary hardship if applied to the
 property for which the variance is
 sought; and,
 (E) the approval does not interfere substan-
 tially with the [County’s] Comprehen-
 sive Plan.

Id. § 812‑5.
 B
 GEFT leased property along I‑69 in Monroe County on
which it wanted to erect a billboard. But GEFT never applied
for a permit because it recognized that the County’s ordinance
disallowed what the company had in mind—a digital bill-
board that would display off-premises commercial speech.
GEFT’s desired billboard would have also been too tall, too
4 Nos. 21-3328 & 22-1004

large, and not set back far enough from the interstate. So the
company jumped to the next stage and, in January 2019,
sought a variance from the Board of Zoning Appeals. The
Board denied the request two months later.
 GEFT then sued the County and the Board under 42 U.S.C.
§ 1983, alleging that the sign standards, permit procedure,
and variance procedure facially violated the First Amend-
ment. The company emphasized that certain sign regula-
tions—those that treated commercial speech differently than
noncommercial speech—were impermissibly content based.
The County has since removed all of these content-based pro-
visions from its zoning code. See Monroe County, Ind., Ordi-
nance 2021‑43 (Nov. 17, 2021). GEFT also contended that the
County and the Board of Zoning Appeals had too much dis-
cretion over whether to grant permits and variances. The
company saw the broad discretion as rendering the permit
and variance procedures an unconstitutional prior restraint
on speech.
 GEFT did not stop at challenging specific provisions of the
sign ordinance, however. Its First Amendment challenges
went further and alleged that the permit and variance proce-
dures could not be severed from the rest of the ordinance,
meaning that if a district court were to enjoin the permit or
variance procedures, then the substantive sign standards
would fall as well. And that is precisely the relief GEFT re-
quested: a permanent injunction against all the County’s sign
regulations, not just those it specifically challenged as uncon-
stitutional. This outcome matters to GEFT because if the
County’s substantive sign restrictions on height, size, setback,
and digital content fall, then it would be able to erect its de-
sired billboard along I‑69 in southern Indiana while also
Nos. 21-3328 & 22-1004 5

collecting money damages for the fact that it could not display
off-premises commercial speech under the old, content-based
regulations.
 C
 The district court entered partial summary judgment for
GEFT. It first determined that several provisions of Monroe
County’s sign ordinance, such as its treatment of commercial
speech, impermissibly restricted speech on the basis of its
content. It further agreed with GEFT that the permit and var-
iance procedures operated as unconstitutional prior restraints
on speech by affording too much discretion to the County and
the Board of Zoning Appeals. The district court then issued a
permanent injunction blocking the enforcement of certain
content-based restrictions, eliminating the permitting re-
quirement altogether, and preventing the Board from grant-
ing any variances with respect to signs.
 From there, however, the district court relied on a severa-
bility clause in the Monroe County Code, § 102‑3, to find the
enjoined provisions severable from the rest of the Code. It
therefore declined GEFT’s invitation to enjoin the County’s
entire sign ordinance. As a result, the district court recognized
that other, constitutional restrictions (such as the ban on
digital signs) would still have prevented GEFT from installing
its billboard. So it denied the company’s request for money
damages.
 The parties cross-appeal. Monroe County seeks review of
the district court’s permanent injunction against the variance
procedure, while GEFT challenges the district court’s severa-
bility determination. The County does not appeal the district
court’s permanent injunction of the permit procedures.
6 Nos. 21-3328 & 22-1004

 II

 We begin with an observation of the limits of our jurisdic-
tion. By repealing several content-based regulations, includ-
ing its ban on off-premises commercial speech, the County
has mooted GEFT’s request for an injunction against those
provisions of the sign ordinance. See Ruggles v. Ruggles, 49
F.4th 1097, 1099 (7th Cir. 2022) (“A matter is moot if it be-
comes impossible for a federal court to provide ‘any effectual
relief’ to the plaintiff.” (quoting Mission Prod. Holdings, Inc. v.
Tempnology, LLC, 139 S. Ct. 1652, 1660 (2019))). Similarly, the
County has mooted GEFT’s severability argument based on
those provisions, as the company’s desired outcome (an in-
junction against the entire sign ordinance) cannot provide ef-
fectual relief from provisions that no longer exist. See id.
 Of course, Monroe County cannot dodge a claim for
money damages by repealing an unconstitutional regulation.
But GEFT’s damages claim is not properly before us on this
interlocutory appeal from an injunction. See 28 U.S.C.
§ 1292(a)(1) (providing for interlocutory review of district
court injunctions); Star Ins. Co. v. Risk Mkt’g Grp. Inc., 561 F.3d
656, 659–60 (7th Cir. 2009) (“The fact that some aspects of [an]
order [are] immediately appealable does not alter the inter-
locutory nature of the district court’s decision.”); see also DM
Trans, LLC v. Scott, 38 F.4th 608, 615 (7th Cir. 2022) (“[Sec-
tion 1292(a)(1)] is a limited exception to the final-judgment
rule, and we construe it narrowly.”). So we do not—indeed,
we cannot—opine on whether the district court was correct to
dismiss GEFT’s money-damages claim with respect to off-
premises commercial speech.
Nos. 21-3328 & 22-1004 7

 III
 Turning to the merits, we first address Monroe County’s
challenge to the variance injunction. In doing so, we review
the district court’s decision to grant a permanent injunction
for an abuse of discretion, though we conduct an independent
review of any underlying legal determinations. See Lacy v.
Cook County, 897 F.3d 847, 867 (7th Cir. 2018).
 A
 In assessing the constitutionality of the County’s variance
procedure, we start with the text of the variance provision it-
self. By its terms, the provision gives the Board of Zoning Ap-
peals meaningful discretion. The Board must consider such
expansive concepts as the general welfare of the community,
substantial adversity, and unnecessary hardship. See § 812-5.
And the Board is not required to grant a variance even if all
the regulatory standards are met—though it cannot grant a
variance unless they all are met. See id.
 GEFT contends that the Board’s discretion is so broad as
to be constitutionally problematic—tantamount to a prior re-
straint on speech. As GEFT sees it, the variance provision op-
erates as a prior restraint because no one can speak (by erect-
ing a billboard that violates the substantive sign require-
ments) until they apply for and receive a variance. And be-
cause prior restraints on speech are “highly disfavored,”
Weinberg v. City of Chicago, 310 F.3d 1029, 1045 (7th Cir. 2002),
there must be “adequate standards to guide the official’s de-
cision.” Thomas v. Chicago Park Dist., 534 U.S. 316, 323 (2002).
Standards are adequate if they are “narrow, objective, and
definite.” Shuttlesworth v. City of Birmingham, 394 U.S. 147,
150–51 (1969). GEFT contends that Monroe County’s variance
8 Nos. 21-3328 & 22-1004

provision fails this test by conferring open-ended discretion
on the Board.
 The County responds that the variance procedure cannot
be a prior restraint because a variance is after-the-fact relief
from a zoning restriction. But that view elevates form over
substance. We see no real difference between a city saying
“you may not march in a parade unless you get a permit” and
“you may not build a digital billboard unless you get a vari-
ance.” In the former context, the permit requirement is clearly
a prior restraint, see generally Forsyth County v. Nationalist
Movement, 505 U.S. 123 (1992), and Monroe County acknowl-
edges as much. But it resists the corollary conclusion that its
variance procedure functions as a prior restraint.
 We call a spade a spade: the County’s variance procedure
operates as a prior restraint. But that does not mean our work
here is done. Rather, the critical question is the one that nec-
essarily follows: Is the County’s variance procedure an uncon-
stitutional prior restraint?
 B
 “[P]rior restraints are not per se unconstitutional.” GEFT
Outdoor, LLC v. City of Westfield, 39 F.4th 821, 825 (7th Cir.
2022) (quoting HH-Indianapolis, LLC v. Consol. City of Indianap-
olis & County of Marion, 889 F.3d 432, 440 (7th Cir. 2018)). In-
deed, prior restraints are constitutionally sound time, place,
or manner restrictions as long as they are content neutral, are
narrowly tailored to serve a significant government interest,
leave open alternative avenues for speech, and do not put too
much discretion in the hands of government officials. See For-
syth County, 505 U.S. at 130. These limitations are motivated
Nos. 21-3328 & 22-1004 9

by one primary concern: censorship. See Thomas, 534 U.S.
at 323.
 The threat of censorship is easiest to see when prior re-
straints are content based. The classic example comes from the
Supreme Court’s decision in Near v. Minnesota ex rel. Olson,
283 U.S. 697 (1931). Minnesota had passed a law allowing lo-
cal prosecutors to enjoin the publication of “malicious, scan-
dalous and defamatory” periodicals, though it allowed pub-
lishers to avoid injunctions by going to court and showing
that “the truth was published with good motives and for jus-
tifiable ends.” Id. at 702–03. The Supreme Court held the law
was “of the essence of censorship” and struck it down. Id.
at 713.
 Or consider Bantam Books, Inc. v. Sullivan, where the Court
invalidated a Rhode Island statute creating a commission to
“educate the public concerning any book, picture, pamphlet,
ballad, printed paper or other thing containing obscene, inde-
cent or impure language, or manifestly tending to the corrup-
tion of the youth.” 372 U.S. 58, 59 (1963). The commission also
recommended violators for prosecution. See id. at 60. The
Court explained that the commission served as an unconsti-
tutional “system of informal censorship.” Id. at 71.
 Prior restraints that distinguish speech based on its con-
tent directly raise the specter of censorship. So the Court has
required extra procedural safeguards in those circumstances
to ensure the availability of prompt, meaningful judicial re-
view. See Freedman v. Maryland, 380 U.S. 51, 58–59 (1965).
 Censorship remains at the heart of the prior-restraint doc-
trine even where restraints are content neutral on their face.
Indeed, the Supreme Court has emphasized that “[w]here the
10 Nos. 21-3328 & 22-1004

licensing official enjoys unduly broad discretion in determin-
ing whether to grant or deny a permit, there is a risk that he
will favor or disfavor speech based on its content.” Thomas,
534 U.S. at 323; see also Forsyth County, 505 U.S. at 130 (“A
government regulation that allows arbitrary application is ‘in-
herently inconsistent with a valid time, place, and manner
regulation because such discretion has the potential for be-
coming a means of suppressing a particular point of view.’”
(quoting Heffron v. Int’l Soc’y for Krishna Consciousness, Inc.,
452 U.S. 640, 649 (1981))). These concerns are why content-
neutral restraints must have some guardrails to ensure that
government officials do not use them to reward favored
speech or censor disfavored speech.
 Still, content-neutral restraints do not pose the same level
of threat that content-based restraints do. For this reason the
Court has not insisted on the Freedman procedural safeguards
when prior restraints are content neutral. See Thomas, 534 U.S.
at 322. And the Court allows—even welcomes—some discre-
tion where the risk of censorship is low.
 This is most evident in Thomas v. Chicago Park District, 534
U.S. 316 (2002). There the Court addressed the Chicago Park
District’s permit scheme, which allowed—but did not re-
quire—the Park District to deny permits in some contexts. For
example, the Park District could deny a permit if one had been
granted to an earlier applicant for the same time and place, if
the applicant had previously violated the terms of a prior per-
mit, or if the intended use would pose an unreasonable dan-
ger to the health or safety of parkgoers or Park District em-
ployees. See id. at 318–19 n.1. In no way did the Court criticize
the Park District for retaining some discretion; rather, the
Court applauded it:
Nos. 21-3328 & 22-1004 11

 The prophylaxis achieved by insisting upon a
 rigid, no-waiver application of the ordinance re-
 quirements would be far outweighed, we think,
 by the accompanying senseless prohibition of
 speech (and of other activity in the park) by or-
 ganizations that fail to meet the technical re-
 quirements of the ordinance but for one reason
 or another pose no risk of the evils that those re-
 quirements are designed to avoid. On balance,
 we think the permissive nature of the ordinance
 furthers, rather than constricts, free speech.

Id. at 325.
 Part of the reason why our review of content-neutral prior
restraints is more flexible than our review of content-based
restraints is that as-applied challenges are available—indeed,
preferable—to address abuses of discretion under content-
neutral laws. As the Court explained in Thomas, “[g]ranting
waivers to favored speakers (or, more precisely, denying
them to disfavored speakers) would of course be unconstitu-
tional, but we think that this abuse must be dealt with if and
when a pattern of unlawful favoritism appears.” Id. No doubt
facial challenges receive warmer judicial reception in the First
Amendment context than in others. Compare Americans for
Prosperity Found. v. Bonta, 141 S. Ct. 2373, 2389 (2021) (explain-
ing that, in the First Amendment context, “[t]he risk of a
chilling effect … is enough”), with United States v. Salerno, 481
U.S. 739, 745 (1987) (requiring that a facial challenge usually
“must establish that no set of circumstances exists under
which the [challenged law] would be valid”). But federal
courts should be wary of invalidating state and local laws on
their face when both state and federal courts are open to as-
12 Nos. 21-3328 & 22-1004

applied challenges. As long as the laws at issue do not chill
speech, we should prefer that any abuse-of-discretion con-
cerns be resolved through as-applied challenges.
 C
 We return to Monroe County’s variance provision with
the consideration of censorship top of mind. Several charac-
teristics of the variance scheme convince us that the censor-
ship risk is low.
 First, the County removed all content-based sign regula-
tions in 2021, so any constitutional concerns must be about
discretion, not outright censorship. And the Board of Zoning
Appeals has never been able to consider a sign’s content when
deciding whether to grant a variance. See § 812‑5 (imposing
five content-neutral requirements that must all be met before
the Board can grant a variance); see also Thomas, 534 U.S. at
322–23 (recognizing that public-safety considerations, like
those in § 812‑5, are content neutral).
 Second, the County permits ample alternatives for speech,
including displays of messages on signs. GEFT could today
erect a nondigital billboard within the required size, height,
and setback limitations. Contrast that with the plaintiffs in
Forsyth County, for example, who could not host any kind of
march, parade, or procession without applying for and re-
ceiving a permit. See 505 U.S. at 130.
 Third, the discretion Monroe County affords to the Board
is not central to the overarching zoning scheme. The variance
procedures only come into play when someone wants to in-
stall a sign that violates some substantive standard. If we as-
sume compliance is the norm, there usually will be no need
for a variance and no opportunity for discretion to play a role
Nos. 21-3328 & 22-1004 13

in the operation of the County’s sign regulations. That is a far
cry from the censorship regimes of Near and Bantam Books,
which threatened every last Minnesota periodical and Rhode
Island publisher.
 Fourth, we cannot lose sight of the federalism interests at
play here. The Indiana legislature requires local governments
like Monroe County to include a variance provision in their
zoning codes. See Ind. Code §§ 36‑7‑4‑901, -918.4, -918.5
(2022). No surprise there, for zoning and variances go hand in
glove: zoning would be unworkable without the flexibility
provided by variances. And Indiana law provides judicial re-
view for zoning decisions, including variance decisions, that
are challenged as arbitrary, capricious, or unsupported by the
evidence. See HH-Indianapolis, 889 F.3d at 440 (citing Ind.
Code § 36‑7‑4‑1614(d)). “[T]he Supreme Court has found or-
dinary state court civil procedures sufficient to protect any
First Amendment interests in erroneous zoning determina-
tions.” Id. (citing City of Littleton v. Z.J. Gifts D-4, L.L.C., 541
U.S. 774, 782 (2004)). The possibility of a state zoning board
abusing its limited discretion in ways that might offend the
First Amendment is not reason enough for a federal court to
step into states’ and municipalities’ traditional sphere of land-
use regulation and facially invalidate zoning laws left and
right.
 In the end we are convinced that Monroe County’s vari-
ance provision does not give so much discretion to the Board
of Zoning Appeals that it violates the First Amendment. So
we reverse the district court’s determination that the variance
provision is unconstitutional and likewise vacate the perma-
nent injunction of § 812 of the Monroe County Code.
14 Nos. 21-3328 & 22-1004

 D
 GEFT contends that we cannot reach this outcome without
putting our circuit at odds with the Sixth Circuit’s recent de-
cision in International Outdoor, Inc. v. City of Troy, 974 F.3d 690
(6th Cir. 2020). We disagree.
 Troy, Michigan—much like Monroe County before the
district court enjoined the permit scheme—required anyone
wanting to build a sign to apply for a permit or else receive a
variance. See id. at 695–97. And Troy’s variance standards
were similar to Monroe County’s, invoking considerations
like “the public interest” and “hardship or practical diffi-
culty.” Id. at 695. The Sixth Circuit held that these factors “did
not meet the ‘narrow, objective, and definite standards’ re-
quired for constitutionality.” Id. at 698 (quoting Forsyth
County, 505 U.S. at 131). So it concluded that Troy’s sign ordi-
nance operated as “an unconstitutional prior restraint on
speech.” Id.
 GEFT reads International Outdoor as establishing that any
variance procedure that bestows any amount of discretion on
a local zoning board violates the First Amendment. That is too
broad a reading of the Sixth Circuit’s opinion. A closer read-
ing reveals important differences between Troy’s sign ordi-
nance and Monroe County’s.
 First, Troy’s sign ordinance included several content-
based distinctions. For example, Troy exempted certain “tem-
porary” signs—such as holiday signs, real-estate signs, and
noncommercial signs—from its permit requirement. See id. at
707. As a result, signs displaying those kinds of messages did
not even need to pass through the permit process, let alone
the variance process, increasing the risk that the Troy
Nos. 21-3328 & 22-1004 15

Building Code Board of Appeals would “discriminate based
on the content or viewpoint of speech by suppressing disfa-
vored speech or disliked speakers.” Id. at 698 (quoting City of
Lakewood v. Plain Dealer Publ’g Co., 486 U.S. 750, 759 (1988)).
Monroe County, on the other hand, has no content-based sign
standards in place today. So whether someone wanting to
erect a sign in Monroe County violates the sign ordinance—
and thus needs a variance—does not in any way depend
on the sign’s content. The risk of censorship is therefore
diminished.
 Second, no one could build any sign in Troy—even one that
abided by all the city’s substantive sign standards—without
first getting a permit. This mattered to the Sixth Circuit, which
emphasized that “the variance provision … is not independ-
ent from other provisions of the ordinance [including the per-
mit requirement], but rather inextricably linked to them by
providing a way of relaxing the very restrictions imposed by
the Sign Ordinance.” Id. at 702. Monroe County, by contrast,
no longer has an operative permitting process for signs be-
cause the district court enjoined it altogether. That means an-
yone (even GEFT) could walk outside and, without first ob-
taining a permit, put up a sign as long as it meets the content-
neutral substantive sign standards. Such signs would not be
subject to prior restraint—or any restraint at all.
 Do not overread this observation. In no way are we sug-
gesting that permits and variances can never be used hand-
in-hand. Instead, we simply highlight the importance of read-
ily accessible alternative avenues for speech. A wholly non-
discretionary land-use permit scheme that moves quickly to
provide applicants with permits (and, thus, an opportunity to
speak) is unlikely to pose constitutional problems even when
16 Nos. 21-3328 & 22-1004

operating alongside a variance scheme that affords limited
discretion to local officials.
 IV
 One issue remains. Recall that the district court enjoined
both the permitting scheme and the variance scheme, and be-
cause Monroe County appealed only the latter, the district
court’s injunction stands as to the permitting scheme. GEFT
asserts that the permitting scheme is not severable from the
rest of the County’s sign ordinance, which would mean the
district court should have enjoined the entire ordinance. That
would fit right into GEFT’s desired outcome—wholesale in-
validation of the substantive sign standards.
 “Severability of a local ordinance,” the Supreme Court has
explained, “is a question of state law.” City of Lakewood, 486
U.S. at 772. Indiana law requires us to ask two questions to
determine if a provision is severable: “whether the statute can
stand on its own without the invalid provision, and whether
the legislature intended the remainder of the statute to stand
if the invalid provision is severed.” City of Hammond v. Her-
man & Kittle Props., Inc., 119 N.E.3d 70, 87 (Ind. 2019). If the
answer to either question is no, “the offending provision is
not severable, and the whole statute must be stricken.” Id.
 We conclude that Monroe County’s substantive sign
standards do not need a permitting scheme to function. Indi-
ana law provides that local government entities can enforce
their own ordinances, see Ind. Code § 36‑1‑4‑11, and Monroe
County, if it so chooses, can do so through civil penalties or
injunctions. See Monroe County, Ind., Code § 817‑3 to -4. The
County, in short, would still be able to enforce the substantive
Nos. 21-3328 & 22-1004 17

sign standards and address violations without a permitting
scheme.
 As for Monroe County’s intent, the County has codified a
severability clause, which states:
 The provisions of County ordinances, resolu-
 tions, orders and rules are separable and if any
 part or provision thereof or the application
 thereof to any person or circumstances is ad-
 judged invalid by a court of competent jurisdic-
 tion on procedural or any other grounds, such
 judgment shall be confined in its operation to
 the part, provision or application directly in-
 volved in the controversy in which the judg-
 ment shall have been rendered and shall not af-
 fect or impair the validity of the remainder of
 the ordinance, resolution, order or rule or the
 application thereof to other persons or
 circumstances.

§ 102‑3.
 Although such a severability clause is not controlling, see
Indiana Educ. Emp. Rels. Bd. v. Benton Cmty. Sch. Corp., 365
N.E.2d 752, 761–62 (Ind. 1977), it does create a presumption
in favor of severability, see City of Hammond, 119 N.E.3d at 89.
Attempting to rebut that presumption, GEFT asserts that
Monroe County could not have wanted sign standards with-
out a permitting regime. Requiring permits is surely easier
than after-the-fact enforcement of nonconforming signs, but
both are preferable to allowing nonconforming signs to pop
up all over the place. Taking the County at its word in its
18 Nos. 21-3328 & 22-1004

severability clause, we agree with the district court that the
sign ordinance is severable.
 In a final plea to avoid severability, GEFT resorts to first
principles. Relying on Justice Gorsuch’s separate opinion in
Barr v. American Ass’n of Political Consultants, Inc., 140 S. Ct.
2335 (2020), the company asserts that severability should not
operate to deprive plaintiffs of their desired remedies. See id.
at 2365–66 (Gorsuch, J., concurring in the judgment in part
and dissenting in part) (“What is the point of fighting this
long battle … if the prize for winning is no relief at all?”). But
the Court’s opinion in Barr, which we must follow, did not
reach the outcome GEFT wants. See id. at 2351 (majority opin-
ion) (“Constitutional litigation is not a game of gotcha …
where litigants can ride a discrete constitutional flaw in a stat-
ute to take down the whole, otherwise constitutional stat-
ute.”). And when we are tasked with reviewing state and local
laws, principles of federalism further caution against using
isolated constitutional missteps to invalidate entire chapters
of state and local codes root and branch—especially when the
state or locality expressly tells us not to.
 V
 We REVERSE the district court’s finding that the variance
provision is unconstitutional and VACATE the district court’s
permanent injunction on those grounds; we AFFIRM the dis-
trict court’s severability determination; and we REMAND for
further proceedings consistent with this opinion.