In the

# United States Court of Appeals
## For the Seventh Circuit

————————————

No. 24-1604

UNION PACIFIC RAILROAD COMPANY,

*Plaintiff-Appellant,*

*v.*

ILLINOIS MINE SUBSIDENCE INSURANCE FUND,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:20-cv-03281-SEM-KLM — **Sue E. Myerscough**, *Judge.*

————————————

ARGUED NOVEMBER 6, 2024 — DECIDED JUNE 2, 2025

————————————

Before BRENNAN, KOLAR, and MALDONADO, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Illinois is one of the largest coal-producing states in the nation. Mining coal creates gaps underground which may collapse, even many years later. A collapse that causes sinking or movement of the ground surface is called mine subsidence.

In 1978, Illinois enacted the Mine Subsidence Act, 215 ILCS 5/803.1, to require companies that write insurance in the state

to offer coverage for mine subsidence. The Act also created the Illinois Mine Subsidence Insurance Fund as a reinsurer for primary insurers that offer mine subsidence coverage. The Fund has the power to sue on behalf of claimants.

As a corporate successor to a dissolved coal mining company, Union Pacific Railroad Company periodically received subsidence claims from the Fund. After years of litigation, Union Pacific sued the Fund for declaratory and injunctive relief, seeking to preclude future cases. The Fund moved to dismiss. The district court allowed the complaint seeking injunctive relief to proceed on certain theories but not others.

Union Pacific brought this interlocutory appeal asking us to reverse the partial dismissal. Instead, we conclude we lack appellate jurisdiction.

## I. Background

The Superior Coal Company, originally a subsidiary of Chicago and North Western Railway Company (later called the "Chicago Railway Company"), operated four coal mines in Macoupin County, Illinois between 1904 and 1953. Superior Coal used the common room-and-pillar method for mining, which involves driving a shaft into the earth to create passageways for the movement of coal and personnel. Once the coal was removed, the empty area was called a "room." Superior Coal used the remaining coal and rock to create "pillars" to sustain the room and the ground surface above the mine. *See Wilms v. Jess*, 94 Ill. 464, 467 (1880). Even though the pillars Superior Coal built were intended to provide structure and support in perpetuity, they began to deteriorate, causing the ground surface above the mine to subside.

Superior Coal dissolved in 1957. In 1995, Union Pacific merged with Chicago Railway Company and assumed its liabilities. But whether either company is responsible for the actions of Superior Coal remains in dispute.

As mine subsidence claims from property owners and their insurers accumulated, that dispute about responsibility came to the fore. The Fund reimbursed subsidence claims under the reinsurance policy. Then, subrogated to the rights of its claimants, the Fund sought to recover its reinsurance payments from Union Pacific. For nearly three decades, the Fund and Union Pacific have litigated the actions of Superior Coal.

Some of those cases were resolved. Between 1996 and 2008, Union Pacific settled approximately 21 mine subsidence claims amounting to less than $1 million. To date, the Fund has brought three lawsuits against Union Pacific. Given the type of relief Union Pacific seeks in this case—to preclude future cases—the past litigation between the parties must be considered.

### A. Prior Litigation

In 2009, after a school in Gillespie, Illinois suffered mine subsidence damage, the Fund submitted a multi-million-dollar claim to Union Pacific. Believing it was not liable as a matter of law, Union Pacific refused to settle. The Fund and the Gillespie School District then sued in Macoupin County Circuit Court, which first dismissed the action. Plaintiffs appealed, the appeals court reversed the dismissal in part, and, on remand, the court entered summary judgment for the plaintiffs. *Gillespie Cmty. Unit Sch. Dist. No. 7 v. Union Pac. R.R. Co.*, 2015 IL App (4th) 140877, ¶¶ 5–6 (discussing procedural history in state trial court).

On appeal, neither party disputed that Union Pacific assumed the liabilities of Chicago Railway Company after their merger. *Gillespie*, 2015 IL App (4th) 140877, ¶ 4. At issue was whether Chicago Railway Company assumed Superior Coal's liabilities or directly participated in its business operations. *Id.* Alternatively, the plaintiffs argued that Superior Coal was an instrumentality or alter ego of Chicago Railway Company. *Id.*

The Illinois Appellate Court held that Chicago Railway Company, and thus Union Pacific, assumed only liabilities existing at the time of Superior Coal's dissolution in 1957, and not unknown, contingent liabilities for mine subsidence. *Id.* ¶ 109. It also held that there was insufficient evidence to causally connect Chicago Railway Company's decisions with damage to the Gillespie school. *Id.* ¶ 118. On the question of alter ego, the court reversed and remanded for resolution of a factual dispute about whether Superior Coal was a "mere instrumentality" of Chicago Railway Company. *Id.* ¶¶ 173–74. The parties settled the case before proceeding on remand.

Beginning in 2011, the Fund tendered dozens more mine subsidence claims to Union Pacific, totaling several million dollars. In 2017, the Fund sued Union Pacific in federal court seeking reimbursement for mine subsidence claims it paid out to two homeowners in Macoupin County. *Ill. Mine Subsidence Ins. Fund v. Union Pac. R.R. Co.*, No. 17-cv-3199, 2019 WL 4015883, at *1 (C.D. Ill. Aug. 26, 2019) ("the 2019 Opinion"). The Fund again alleged the alter ego theory, and in the alternative, it argued that Chicago Railway Company assumed all of Superior Coal's liabilities because the dissolution constituted a de facto merger of the two companies. *Id.* at *3. While the case was pending, Union Pacific agreed to toll the statute of limitations on 25 of the tendered subsidence claims.

In the 2019 Opinion, the district court rejected both theories. It ruled that the Fund had failed to prove the alter ego or de facto merger theories so as to justify piercing the corporate veil. *Id*. at *26–27. The Fund filed a notice of appeal to this court but then voluntarily dismissed it. *Ill. Mine Subsidence Ins. Fund v. Union Pac. R.R. Co.*, No. 19-2965, 2020 WL 1682791 (7th Cir. Jan. 6, 2020). With all litigation resolved, Union Pacific declined to enter any more tolling agreements.

Less than a year later, the Fund filed another complaint in the Macoupin County Circuit Court (Case No. 2020 LM 63) ("Hill Complaint"), reasserting some of the same theories for Union Pacific's liability that had been rejected in *Gillespie* and the 2019 Opinion. The Fund contended that Union Pacific had assumed Superior Coal's liabilities, acted as its alter ego, and for the first time proposed that Union Pacific is a successor to Superior Coal's liabilities as a "related entity." Union Pacific removed the case to district court, asserting jurisdiction under 28 U.S.C. § 1332 because the parties were diverse and the amount in controversy exceeded $75,000. But because the amount in controversy in *Hill* is just over $45,000, the district court remanded the case to state court.

### B.  This Dispute

With *Hill* pending again in state court, Union Pacific filed this action in federal court.[1] It sought a declaration that the

---

[1] The district court had diversity jurisdiction here under 28 U.S.C. § 1332(a). Union Pacific is incorporated in Delaware and has its principal place of business in Nebraska. The Fund is incorporated and has its principal place of business in Illinois. Union Pacific alleges that the amount in controversy, considering approximately 20 mine subsidence claims tendered by the Fund since August 2019 and all future subsidence claims,

Fund was barred by both issue and claim preclusion from re-litigating theories decided in *Gillespie* and the 2019 Opinion. Union Pacific also sought a declaration that the Fund was the real party in interest in all current and future cases, as well as an injunction barring the Fund from filing any future subsidence claim deemed precluded.

The Fund moved to dismiss, denying it was the real party in interest in the mine subsidence claims it tendered to Union Pacific. Per the Fund, for each reimbursement of a mine subsidence claim, it was subrogated to the claimant's rights. It thus exercised a new assignment of rights with each successive subsidence claim. The Fund could not be barred, it argued, from exercising the rights of a claimant who could independently sue. *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 953 (7th Cir. 2000) ("Since [the subrogor] had the right to bring his own claim, that is what he conveyed to [the subrogee] in the assignment.").

The magistrate judge ruled for Union Pacific.[2] Relying on the Supreme Court's discussion of exceptions to nonparty preclusion in *Taylor v. Sturgell*, 553 U.S. 880 (2008), the magistrate judge concluded that Union Pacific had sufficiently alleged that the Fund was barred from relitigating the theories decided in *Gillespie* and the 2019 Opinion. On review, the district judge agreed in part. Union Pacific was allowed to seek

---

amounts to tens of millions of dollars, far exceeding the $75,000 statutory minimum.

[2] The parties did not consent to the magistrate judge hearing the case and issuing a final judgment under 28 U.S.C. § 636(c)(1). A district judge may adopt the magistrate's recommendations or reject them and decide the matter de novo. FED. R. CIV. P. 72(b)(3). This case was reviewed and decided by the district judge.

declaratory and injunctive relief as to the subsidence claims the Fund acquired before the *Gillespie* case and the 2019 Opinion. *Union Pac. R.R. Co. v. Ill. Mine Subsidence Ins. Fund*, No. 20-cv-03281, 2022 WL 986007, at *6 (C.D. Ill. Mar. 31, 2022). But the district judge ruled that the reasoning in *Perry* called for dismissing the complaint as to any subsidence claims the Fund might acquire after *Gillespie* and the 2019 Opinion. *Id.*

Union Pacific amended its complaint a second time to no avail.[3] In Count I, it sought a declaration that the subsidence claims acquired by the Fund before the *Gillespie* case and the 2019 Opinion were barred by issue and claim preclusion. It added a request for the court to clarify when a subsidence claim may be deemed "acquired" by the Fund. In Count II, Union Pacific sought a declaration that future subsidence claims the Fund acquired would be barred by issue preclusion and nonparty issue preclusion, the latter a theory the Fund had not raised before. And in Count III, Union Pacific asked for injunctive relief for the theories outlined in Counts I and II.

On the Fund's renewed motion to dismiss, the district court reiterated its holding from 2022. It allowed Count I to proceed. But the court again denied Union Pacific's request for future injunctive relief. It said Count II "appears as an attempt to ask the Court to reconsider" its opinion from 2022. Without a proper motion to reconsider, the court declined to do so and dismissed Count II. As to Count III, the court

---

[3] Union Pacific amended its complaint twice. The first amendment occurred as a matter of course before the magistrate judge issued its first report and recommendation. Union Pacific amended its complaint a second time after the district judge issued its first order. That Second Amended Complaint is the operative complaint for this appeal.

declined to dismiss the portion of injunctive relief related to Count I but dismissed those parts related to Count II. Union Pacific filed an interlocutory appeal, asserting this court has jurisdiction under 28 U.S.C. § 1292(a)(1) and seeking review of the dismissal of its request for declaratory and injunctive relief in Count II and relevant portions of Count III.[4]

## II. Appellate Jurisdiction

Prior to considering the merits of any appeal, we must address the question of appellate jurisdiction. *Upchurch v. O'Brien*, 111 F.4th 805, 810 (7th Cir. 2024). That jurisdiction frequently arises under 28 U.S.C. § 1291, which authorizes review of the "final decisions" of a district court. *Shakman v. Clerk of Cook Cnty.*, 994 F.3d 832, 838 (7th Cir. 2021). But an exception in 28 U.S.C. § 1292(a)(1) provides jurisdiction to adjudicate orders from the district court "granting, continuing,

---

[4] After its notice of appeal, Union Pacific asked the district court to enter final judgment on its dismissal of Count II and corresponding portions of Count III (the two counts in this appeal) under Federal Rule of Civil Procedure 54(b). It also asked the district court to certify two issues to our court under 28 U.S.C. § 1292(b). Union Pacific raises both issues in its principal brief to us.

The district court declined to enter final judgment under Rule 54(b). Even though the contentions in Count I and Count II are "separable," "[g]ranting certification here would run counter to the conservation of judicial resources." The court also declined to certify issues for appeal under § 1292(b) because Union Pacific failed to satisfy the first of five requirements set out in our caselaw. *See Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) ("[1] there must be a question of *law*, [2] it must be *controlling*, [3] it must be *contestable*, and [4] its resolution must promise to *speed up* the litigation. There is also a nonstatutory requirement: [5] the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed.").

modifying, refusing or dissolving injunctions," even before a final judgment has issued. *See, e.g.*, *DM Trans, LLC v. Scott*, 38 F.4th 608, 615–16 (7th Cir. 2022) (holding that the court has jurisdiction to adjudicate an appeal from a district court's order "refusing" to issue a preliminary injunction).

Section 1292(a)(1) is a limited exception to the final judgment rule. *Id.* at 615; *Albert v. Trans Union Corp.*, 346 F.3d 734, 737 (7th Cir. 2003) ("[W]e approach the § 1292(a)(1) exception 'somewhat gingerly lest a floodgate be opened' that would deluge the appellate courts with piecemeal litigation." (quoting *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 481–82 (1978))). Interlocutory appeals are thus granted sparingly so as not to "invite[] piecemeal appeals." *Chi. Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 812 (7th Cir. 2018); *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 490 (7th Cir. 2012).

Before addressing whether jurisdiction exists over this appeal, we note two items.

First, the district court dismissed Count II and corresponding parts of Count III. Count I, and corresponding parts of Count III, remain pending in that court. Even though that ruling is not a formal or explicit refusal of injunctive relief, Union Pacific may in principle still invoke jurisdiction under § 1292(a)(1) because the portion of Count III the court dismissed contained a request for an injunction. *Allico Nat'l Corp. v. Amalgamated Meat Cutters & Butcher Workmen*, 397 F.2d 727, 729 (7th Cir. 1968) (appeal under § 1292(a)(1) permitted from an order dismissing a count of the complaint seeking injunctive relief).

Second, § 1292(a)(1) "ordinarily" permits the immediate appeal of grants or refusals of preliminary injunctions. *Ty, Inc.*

*v. Publications Intern., Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002).
Here, Union Pacific did not request a preliminary injunction
for the district court to deny. Indeed, it does not specify
whether it seeks a preliminary or a permanent injunction. The
Second Amended Complaint seeks injunctive relief in gen-
eral, and earlier versions of the complaint do not specify the
type of injunction Union Pacific seeks either. Considering the
nature of the relief sought—to enjoin the Fund from suing
based on theories adjudicated in *Gillespie* and the 2019 Opin-
ion—we can presume Union Pacific requests permanent in-
junctive relief. But ultimately the type of injunction sought is
not material for deciding jurisdiction under § 1292(a)(1). *Parks
v. Pavkovic*, 753 F.2d 1397, 1403 (7th Cir. 1985).

We return then to the question of whether jurisdiction ex-
ists over this interlocutory appeal of the district court's refusal
of a permanent injunction. Key to that inquiry is how the dis-
trict court ruled on the injunctive relief Union Pacific requests.
That ruling can be viewed in two ways, the first advocated by
the Fund, the second by Union Pacific.

The first asks, did the district court narrow the scope of the
injunction? This court has recognized that appellate jurisdic-
tion exists when the district court's order definitively de-
nies—but not when it merely narrows—an injunction.

"[W]hen a denial of an injunction is sufficiently 'definitive'
to allow interlocutory appeal" is a "subtle and complicated"
question. *Elliott v. Hinds*, 786 F.2d 298, 300 (7th Cir. 1986). In
*Elliott*, the district court found as a matter of law that perma-
nent injunctive relief could not be granted, a determination
that would not be reconsidered because it is not fact-bound.
*Id*. at 300–01. The court stayed proceedings pending appellate
resolution. *Id.* at 301. The finality on the question of injunctive

relief in the district court meant appellate jurisdiction was present.

Then, in *Holmes v. Fisher*, 854 F.2d 229, 230 (7th Cir. 1988), a district court denied a request for an injunction on standing grounds but allowed a request for damages to remain unresolved. Concluding that Holmes "suffered total defeat on his request for an injunction," *id*. at 231, this court held "that an order denying injunctive relief is immediately appealable even though a request for damages remains pending," *id*. at 232.

Fifteen years later, our precedent in *Albert v. Trans Union Corporation* examined this rule to account for when the injunctive relief denied was substantially different from the relief still pending in the district court. 346 F.3d at 739. A second inquiry now asks, did the district court refuse an injunction "of an entirely different nature" than that still pending in the district court? *Id.* This may occur when a case involves multiple injunctions, only some of which the district court's order dismissed. There, the district court's denial of equitable relief cannot be a narrowing because an injunction "relating to distinct subject matter or seeking completely different injunctive relief" remains in the district court. *Id.*

For this second question, the court in *Albert* placed cases on a continuum between those guaranteed appellate jurisdiction—because the district court's order entirely denied equitable relief—and those that did not involve dismissal of any injunctive relief. *Id.* A case in which the injunctive relief denied by the district court was different from the injunctive relief pending in that court could be appealed under § 1292(a)(1). *Id.*

The Fund argues that the district court's order narrowed the injunctive relief still pending before it, so there is no appellate jurisdiction. Union Pacific counters that the order dismissed a substantially different type of injunctive relief than what remains pending, so appellate jurisdiction exists. We consider each possibility as to how the district court ruled on the injunctive relief Union Pacific seeks.

## A. Narrowing Injunctive Relief

A district court's order on permanent injunctive relief "result[s] in conclusive findings as to the defendants' actual liability." *Lacy v. Cook County*, 897 F.3d 847, 859 (7th Cir. 2018). It follows that grants of permanent injunctions are always appealable. *Parks*, 753 F.2d at 1403; *Smith v. Vulcan Iron Works*, 165 U.S. 518, 525 (1897) (establishing this interpretation of § 1292(a)(1)). "[D]efinitive" refusals to grant permanent injunctions are also appealable. *Elliott*, 786 F.2d at 300. "[I]f the further proceedings in the trial court are quite unlikely to make the appeal moot or even affect the issues on appeal, there is no reason to delay the appeal while they are resolved; and the delay may be a source of cost." *Parks*, 753 F.2d at 1401–02.

But refusals of permanent injunctions that are not "sufficiently 'definitive'" may not be appealed under § 1292(a)(1). *Elliott*, 786 F.2d at 300. For example, if a district court denies a motion for summary judgment, but the plaintiff may still prevail on the injunction at the conclusion of trial, then the order is not appealable. *Parks*, 753 F.2d at 1403.

Union Pacific argues that the district court's order "denied almost all" injunctive relief. The only subsidence claims remaining before the district court are those the Fund tendered

before the *Gillespie* case and the 2019 Opinion. But because the statute of limitations has run on nearly all those subsidence claims, Union Pacific contends, the only case that would be implicated if it prevails in district court is *Hill*, which remains pending in state court. Thus, injunctive relief in district court would impact only one case with just over $45,000 in dispute. In contrast, this appeal involves all subsidence claims the fund acquired as of *Gillespie* and the 2019 Opinion.

The Fund counters that we lack appellate jurisdiction because Union Pacific continues to pursue injunctive relief in the district court that implicates circumstances "well beyond the *Hill* case." To the Fund, even if issue preclusion applies only to *Hill* and any other subsidence claim acquired before *Gillespie* and the 2019 Opinion, claim preclusion as pleaded in Count I is not limited to that time frame.

Both parties misapprehend our caselaw's requirement as to whether a district court's refusal of a permanent injunction is "sufficiently 'definitive.'" *See Elliott*, 786 F.2d at 300. The question does not turn on the number and/or the monetary value of cases that would be implicated by the district court's ultimate resolution of this action. Rather, it turns on the nature of injunctive relief before the district court.

In the original and First Amended Complaint, Union Pacific pleaded collateral estoppel (or issue preclusion) in Count I, res judicata (or claim preclusion) in Count II, a declaration that the Fund is the real party in interest in Count III, and injunctive relief based on issue and claim preclusion in Count IV. In 2022, the district court allowed Union Pacific to seek relief based on the theories of issue and claim preclusion only as to the subsidence claims the Fund acquired before the *Gillespie* case and the 2019 Opinion, but not as to unknown,

contingent subsidence claims. *Union Pac. R.R. Co.*, 2022 WL 986007, at *6–8. So, the district court narrowed Union Pacific's request for a permanent injunction.

Union Pacific filed a Second Amended Complaint, pleading the theories the district court allowed in 2022 in Count I and the theories the court rejected in Count II. In Count III, Union Pacific asked for an injunction against future litigation precluded by Counts I and II. In 2024, the district court rebuked Union Pacific for amending Count II into what "appears as an attempt to ask the Court to reconsider" its opinion from 2022. The district court then reiterated its earlier decision and dismissed Count II and corresponding portions of Count III. This is no more than a repetition of the district court's earlier decision to narrow the permanent injunction.

A request for a permanent injunction therefore remains pending in the district court in Count I and corresponding portions of Count III. This means the district court's dismissal of Count II and corresponding portions of Count III does not end Union Pacific's plea for relief. It may still secure the remaining permanent injunction at the conclusion of trial. Such a victory would allow Union Pacific to defend against the Fund's contentions under the doctrines of issue and claim preclusion, a nontrivial power. *See generally Creation Supply, Inc. v. Selective Ins.*, 51 F.4th 759, 763–65 (7th Cir. 2022) (describing the effect of issue and claim preclusion under Illinois law); *Daza v. Indiana*, 2 F.4th 681, 683–84 (7th Cir. 2021) (same under federal law).

Even if Union Pacific does not prevail on the pending Count I and corresponding portions of Count III at trial, the resolution of those counts is likely to affect Count II and corresponding portions of Count III on appeal. The relief sought

on appeal and remaining in the district court involves similar theories of issue preclusion. The district court's resolution of the permanent injunction will thus affect this court's approach to those theories.

When proceedings in the district court are likely to affect the issues on appeal, our caselaw advises against concluding that jurisdiction exists for an interlocutory appeal. *See Parks*, 753 F.2d at 1401–02. We decline to step in front of the district court on the resolution of these theories before it has had the opportunity to fully and finally resolve them. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 108 F.4th 458, 478 (7th Cir. 2024) ("We are 'a court of review,' not 'one of first view.'" (quoting *Arreola-Castillo v. United States*, 889 F.3d 378, 383 (7th Cir. 2018))). Because resolution of the counts pending in the district court is likely to affect the counts on appeal, we lack appellate jurisdiction.

The district court has yet to make a final determination on Union Pacific's requested permanent injunction. That court's refusal of the permanent injunction pleaded in Count II and corresponding portion of Count III is a narrowing, rather than a "sufficiently 'definitive'" denial to allow interlocutory appeal. *Elliott*, 786 F.2d at 300.

### B. Refusing Different Injunctive Relief

Union Pacific offers a different analysis. It contends we should follow the reasoning in *Albert* for circumstances where a plaintiff "sought multiple injunctions and the district court denied some of them while leaving others pending." 346 F.3d at 739. The *Albert* test requires an inquiry into whether the relief sought on interlocutory appeal is "substantial and similar" to the relief still available in the district court. *Id.* This

interpretation of the district court's order changes the analysis, but not the result.

Reviewing this court's caselaw, *Albert* said interlocutory appeals "represent a continuum." *Id.* At one end are cases where a district court's order results in "a conclusive denial of all equitable relief." *Holmes*, 854 F.2d at 230. This court has jurisdiction over the interlocutory appeal of those cases under § 1292(a)(1). *Id.* (jurisdiction exists "even though a request for damages lives on"). *See also Chi. Joe's Tea Room*, 894 F.3d at 812 (interlocutory appeal reviewable when the district court "stripped the case of its equitable component"); *DM Trans*, 38 F.4th at 616 (same). At the other end are cases in which this court lacks jurisdiction because the district court's order did not involve a denial of injunctive relief. *Albert*, 346 F.3d at 739.

Difficult cases arise in the middle of the continuum where plaintiffs seek injunctive relief, only part of which the district court denies. *Id.* An interlocutory appeal from a partial refusal of injunctive relief requires an inquiry into whether that relief is "substantial and similar" to the relief still available in the district court. *Id.* If the injunctive relief refused by the district court is "of an entirely different nature—relating to distinct subject matter or seeking completely different injunctive relief" than that remaining before the district court, then jurisdiction could be appropriate. *Id.* In sum, whether jurisdiction exists on an interlocutory appeal depends on the type of injunctive relief remaining in the district court.

Union Pacific argues that the injunctive relief the district court's order refused is different from the injunctive relief still pending in the district court. In support, it first contends that the resolution of Count I would not impact the legal issues in Count II. Union Pacific second frames the contentions in

Counts I and II as temporally distinct. Given these two con-
siderations, it submits, the injunctive relief on appeal differs
enough from the injunctive relief pending in the district court
such that our court has jurisdiction under *Albert*'s test. The
Fund counters that the injunctive relief in the district court is
"the same or similar" to what the district court's order re-
fused, so jurisdiction is lacking.

The parties agree, and we decided above, that a request for
an injunction remains pending in the district court. The in-
quiry turns next to whether the injunctive relief denied is
"substantial and similar" to the request for injunctive relief
pending in the district court. *Albert*, 346 F.3d at 739.

First, as to "substantial," if Union Pacific should ultimately
succeed in the district court, it will have the considerable
power to bar litigation from the Fund based on issue and
claim preclusion. Union Pacific will be able to irrevocably dis-
pose of all subsidence claims the Fund acquired before the
judgments in *Gillespie* and the 2019 Opinion. This ability to
preclude future litigation is a substantial form of relief. *See,
e.g.*, *Brown v. Felsen*, 442 U.S. 127, 132 (1979) ("Because [claim
preclusion] may govern grounds and defenses not previously
litigated, … it blockades unexplored paths that may lead to
truth. … It therefore is to be invoked only after careful in-
quiry.").

We note again that the parties' dispute about the number
and value of the cases that would be implicated by the district
court's resolution of this action misses the mark. We have not
been presented, nor have we located, any authority that sets a
quantum for the injunctive relief necessary to establish appel-
late jurisdiction. Thus, even if Union Pacific is correct that
only the *Hill* case would be implicated if the district court

grants injunctive relief in Count I, this would not justify find-
ing appellate jurisdiction for Count II.

Second, the inquiry asks whether the injunctive relief re-
maining in the district court is "similar" to the relief sought
on appeal. In *Samayoa ex rel. Samayoa v. Chicago Board of Edu-
cation*, this court ruled that there was no jurisdiction for an in-
terlocutory appeal when the count remaining in the district
court "involves the same factual situation, alleges constitu-
tional violations, and seeks essentially the same remedy" as
the count on appeal. 783 F.2d 102, 104 (7th Cir. 1986). As in
*Samayoa*, identical facts and broad overlap in the theories
pleaded in Counts I and II advise against finding appellate
jurisdiction. Both the facts and theories of relief should be
similar to satisfy this inquiry.

The underlying facts presented in the Second Amended
Complaint are identical for both counts. Further, no new facts,
documents, or witnesses are discoverable as of the time this
information was first compiled for the 2017 case. *Ill. Mine Sub-
sidence Ins. Fund*, 2019 WL 4015883, at *3 ("The relevant events
occurred between 1902 and 1957. By 2017, the individuals
with personal knowledge of the relevant events were all de-
ceased.").

The theories contained in Counts I and II also overlap. In
both counts Union Pacific asks for the same kind of injunctive
relief: a declaration that the Fund is precluded from bringing
further suits against it. In Count I, Union Pacific seeks to en-
join the Fund based on issue and claim preclusion. Count II
presents the same theory of issue preclusion as well as the re-
lated theory of nonparty issue preclusion, which concerns

whether a nonparty can be bound by a final judgment in a previous action.[5]

The district court disagreed, concluding that the theories in Counts I and II are different. Yet that conclusion was reached without reasoning. Still, Union Pacific picks up that conclusion and contends that resolution of Count I would not impact the legal issues contained in Count II.

We see little difference in the legal theories. Nonparty issue preclusion is just a variation on the theory of issue preclusion. In "'limited circumstances,' nonparties may be adequately represented in litigation and bound by a judgment." *Oneida Nation v. Village of Hobart*, 968 F.3d 664, 688 (7th Cir. 2020) (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)). The Supreme Court has described six such circumstances, including when a nonparty controlled the prior litigation or privity existed with a party to the prior litigation. *Taylor*, 553 U.S. at 893–95. Nonparty issue preclusion can be viewed as issue preclusion with the additional element of control or privity.

Variation in the legal theory asserted in support of the same kind of remedy does not render those varied theories dissimilar. *See Samayoa*, 783 F.2d at 102–04; *Albert*, 346 F.3d at 739. In *Samayoa*, the plaintiffs alleged the Chicago Board of Education discriminated against them because of their race when it denied them admission to a school administering a

---

[5] In Count II of the Second Amended Complaint, and at Oral Argument at 1:09–1:25, Union Pacific has confirmed that it has abandoned questions of claim preclusion and limited this interlocutory appeal to issue preclusion and nonparty issue preclusion.

desegregation plan. 783 F.2d at 102. Their complaint charged the Board and other defendants with violating: (1) the First, Fifth, and Fourteenth Amendments for which they sought to enjoin the desegregation plan; (2) Title VII of the Civil Rights Act of 1964; and (3) the Due Process and Equal Protection Clauses for which they sought the same injunctive relief. *Id.* at 102–03. The district court dismissed the first and second counts but allowed the third count to go forward. *Id.* at 103. This court refused to hear the appeal. Even though the injunctive relief sought in count one was dismissed, count three, "which remains for trial, involves the same factual situation, alleges constitutional violations, and seeks essentially the same remedy." *Id.* at 104.

Similarly, in *Albert*, the plaintiff sought to appeal the district court's denial of injunctive relief under the Fair Credit Reporting Act, 15 U.S.C. § 1681. 346 F.3d at 739 Even though relief under the FCRA was denied, this court said "substantial and similar" injunctive relief was still available in the district court. *Id.* It denied jurisdiction because plaintiff's request to enjoin the defendants from violating the California Business & Professions Code §§ 17203 and 17204, as well as under the laws of other states, was still pending before the district court. *Albert*, 346 F.3d at 739. Each of the theories for relief were premised on the same underlying facts. *Id.* "[T]he district court's order ruling that injunctive relief is not available under the FCRA did not truly deny an injunction but rather 'narrowed the grounds of dispute.'" *Id.* at 740 (citing *Holmes*, 854 F.2d at 231). In other words, the similarity in theories and facts rendered the district court's action a narrowing of, rather than a refusal of, a different type of injunction.

As in *Samayoa* and *Albert*, here the nature of the injunctive relief remaining in the district court precludes appellate jurisdiction. Even though Count II was dismissed, Count I remains for trial, involves the same facts, alleges violations under similar legal theories, and seeks essentially the same remedy. *See Samayoa*, 783 F.2d at 104. The slight variation in legal theory between issue preclusion and nonparty issue preclusion, distinguished only by the addition of a privity requirement in the latter doctrine, does not change the essential similarity of Counts I and II.

Union Pacific next argues that what distinguishes the injunctive relief on appeal and that pending in the district court is the universe of cases that would be implicated. It contends that a temporal distinction between the subsidence claims covered by Counts I and II renders them fundamentally distinct. To Union Pacific, the relief in the district court is retrospective, covering already-accrued suits, while the relief sought on appeal is prospective, asking for relief from future contingent suits.

Our court advised in *Albert* that appellate jurisdiction may exist if the remaining injunctive relief in the district court is "of an entirely different nature," meaning that it relates to different subject matter or seeks different injunctive relief. 346 F.3d at 739. But that theoretical scenario is not present here. In both Counts I and II, Union Pacific seeks injunctive relief under similar theories. Further, the temporal difference between the two counts is a function of Union Pacific's artificial construction of its pleadings in the Second Amended Complaint. The timing of when a subsidence claim arises does not transform the doctrine of preclusion or the nature of injunctive relief into something else.

Application of the *Albert* standard to the interlocutory appeal sought in this case shows "substantial and similar" injunctive relief remains in the district court. 346 F.3d at 739. The district court's order thus is not appealable.

\*       \*       \*

Whether the district court's order narrowed injunctive relief, or refused different injunctive relief, we do not have appellate jurisdiction. This result is consistent with our caselaw's recognition that § 1292(a)(1) provides a limited exception. *DM Trans*, 38 F.4th at 615. Per *Chicago Joe's Tea Room*, allowing interlocutory appeals from a refusal of a permanent injunction "invites piecemeal appeals." 894 F.3d at 812. There, this court expressed a desire to revisit this approach in a future case. *Id.* at 812 n.1. This is not that case, but the same concerns apply here.

### III.  Conclusion

A district court's order refusing an injunction does not create appellate jurisdiction when that order was not "sufficiently definitive." The result is the same under the *Albert* test when "substantial and similar" injunctive relief remains pending in the district court. Under either approach, appellate jurisdiction is lacking here. For these reasons, this appeal is DISMISSED.